389 So.2d 1328 (1980)
STATE of Louisiana
v.
John Morgan WILLIAMSON.
No. 67338.
Supreme Court of Louisiana.
October 7, 1980.
Rehearing Denied November 10, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. *1329 Brown, Dist. Atty., James M. Bullers, Asst. Dist. Atty., for plaintiff-appellee.
S. Patrick Phillips, Indigent Defender B., Bossier City, for defendant-appellant.
CALOGERO, Justice.
Defendant, John Morgan Williamson, was charged by bill of information with the crime of attempted first degree murder, a violation of R.S. 14:27 and 14:30. He was tried before a twelve person jury which found him guilty of attempted second degree murder. He was thereafter charged with and convicted of being a multiple offender under R.S. 15:529.1, and sentenced to sixty years at hard labor. He now appeals on the basis of eleven assignments of error, eight of which are argued in brief. Because we reverse defendant's conviction and order him retried for the reasons which follow, we find it unnecessary to address the specific assignments of error.
Near midnight on July 17, 1979, Airman Jackie Neie from Barksdale Air Force Base called for a Yellow Cab to pick him up at the Mint Lounge in Bossier City. Before the cab arrived, he met two fellow airmen who offered him a ride back to the base, one of whom was the victim, Gary Batsell. When the cab arrived, the driver was told he was no longer needed and given a dollar for his trouble.
After a brief verbal exchange, the cab followed the three airmen for several miles and jockeyed with their truck along the highway. The cab was directly behind the truck when it turned at an intersection and a shot was fired, apparently from the taxi. The bullet entered the back window of the truck and struck Batsell in the back of the neck. The victim was paralyzed from the neck down for ten months, then died as a result of his injuries.
Police investigation immediately after the shooting revealed that the cab dispatched to the Mint Lounge in response to the call was cab 41, driven by John Williamson. A police radio broadcast went out alerting officers to be on the lookout for cab 41 and the defendant.
The Shreveport Police Department spotted the defendant within an hour of the shooting. Defendant was stopped and was patted down while standing next to the open door of the cab. In response to a statement made by the defendant, the officer retrieved a pistol from under the seat of the cab. Tests by a weapons identification expert proved the seized gun to be the same one which fired the shot that hit the victim.
By legislative enactment, the law pertaining to first and second degree murder had been changed on June 29, 1979, shortly before the shooting of Airman Batsell on July 17, 1979.[1]
Between October 1, 1976 and June 29, 1979, first degree murder had been defined simply as any specific intent killing:
"First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. . .", (R.S. 14:30, as amended by Acts 1976, No. 657, effective October 1, 1976);
and second degree murder after September 8, 1978 and before June 29, 1979 had by definition included only felony murder:
"Second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm. . . ." (R.S. 14:30.1 as amended by Acts 1978, No. 796, § 1, effective September 8, 1978).
By amendment to the law effective June 29, 1979, however, the first degree murder statute was changed to include only four restrictive specific intent killings:
"First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm *1330 and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, aggravated burglary, armed robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person; or
(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing....", (R.S. 14:30, as amended by Acts 1979, No. 74, § 1, effective June 29, 1979);
and the definition of second degree murder was changed to include, besides felony murder, any specifically intended murder:
"Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm...." (R.S. 14:30.1, as amended by Acts 1979, No. 74, § 2, effective June 29, 1979.)[2]
This alteration of the law, the most recent in a series of changes [3] made by the legislature and prompted by their construction of court decisions, has been the cause of some confusion as to the definitions of the crimes of first and second degree murder.
The judge, along with the prosecutor and counsel for the defense, apparently entertained the misconception that the law as it appeared prior to the 1979 amendment was still in effect at the time of the shooting, when in fact the new law had gone into effect some nineteen days before the offense. The charge reflected that mistake. The trial judge told the jury that to find defendant guilty of attempted first degree murder they need only determine that he specifically intended to kill, and to find the defendant guilty of attempted second degree murder they could do so only upon finding a commission of felony murder, when in truth, first degree murder was the four restrictive specific intent killings and second degree murder was any specific intent killing and/or felony murder.
The situation was further complicated by the judge's reading to the jury a list of verdicts responsive to the charge of attempted first degree murder. He told the jury that attempted second degree murder was responsive to a charge of attempted first degree murder. That of course is true under the law pertinent to the date of the offense, i. e., second degree murder, any "specific intent" killing, is lesser and included to first degree murder as defined in R.S. 14:30 as amended by Acts 1979, No. 74, § 1. However it was not so, and we so held, in State v. Booker, 385 So.2d 1186 (La.1980),[4] *1331 that felony murder was lesser and included to the charge of any specific intent killing.
The consequence of this misstatement of the law is that the jury determined defendant was not guilty [a conviction of a lesser acquits of the greaterGreen v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957)] of an attempted specific intent killing (what they were told was attempted first degree murder) and guilty of attempted felony murder (what they were told was attempted second degree murder) which the evidence clearly did not support; yet technically their conviction for attempted second degree murder fit the actually prevailing law and evidence upon which the state relied.
We determine that fairness dictates reversal of the defendant's conviction under these circumstances. The jury is charged to apply the law as given them by the judge, C.Cr.P. art. 802(2). Presuming that they did so, the otherwise valid verdict was in truth a determination that defendant committed a felony murder. The evidence and indeed the state's very theory of this case does not support such a determination.
The state points out that defendant did not object to the erroneous jury instruction concerning definitions of the crimes of first degree and second degree murder. And they call our attention to a long line of cases to the effect that erroneous jury instructions are not errors patent on the face of the record. Absent objections and because the trial court is denied an opportunity to correct them, such errors are generally not reviewable. State v. Progue, 350 So.2d 1181 (La.1977); State v. Roche, 341 So.2d 348 (La.1976); State v. Smith, 339 So.2d 829 (La.1976).
The state's argument is of course correct, so far as it goes. Nonetheless it is within the province of this reviewing court to entertain complaint of Constitutional violations on appellate review notwithstanding that consideration of such complaint more often than not is deferred until filing of a writ of habeas corpus. This Court's usual pretermission of such issues stems from the need of an evidentiary hearing[5] which can only be had incident to the writ of habeas corpus. The record before us, however, bears full and sufficient proof of the error which no posterior hearing could augment. For this reason, the need for delay is obviated.
In the case at hand the asserted error involves the very definition of the crime of which defendant was in fact convicted. Such an error is of such importance and significance as to violate fundamental requirements of due process.
Furthermore to defer consideration until defendant were to file a writ of habeas corpus would only serve to prolong the occasion when defendant might again be tried, with resultant prejudice to the state's opportunity to reassemble its witnesses and evidence. For these reasons we find it preferable now to reverse defendant's conviction and sentence and order him retried.
Because reversal of defendant's conviction results not from evidentiary insufficiency but from trial court error, and upon defendant's urging in brief on this appeal, he is subject to being retried for attempted second degree murder, the crime of which convicted. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). While the jury may [6] have decided against finding a specific intent killing, defendant was never *1332 really in jeopardy of being convicted for such inasmuch as first degree murder did not encompass a simple specific intent killing at the time of the offense.

Decree
For the foregoing reasons, the conviction and sentence of the defendant are reversed and the case is remanded to the trial court for retrial.
REVERSED AND REMANDED.
BLANCHE, J., concurs and assigns reasons.
LEMMON, J., concurs and assigns reasons.
MARCUS, J., dissents.
DENNIS, J., dissents and assigns reasons.
BLANCHE, Justice (concurring).
Ordinarily erroneous jury instructions not objected to are not reviewable. In this case, the objections were not forthcoming because all parties were mistaken as to the definitions of first and second degree murder at the time of trial. I agree that a trial error of this magnitude deprived defendant of due process of law and he should be retried.
LEMMON, Justice, concurring.
It would be a simple matter to affirm this conviction. The evidence clearly supports a finding of guilt beyond a reasonable doubt of every element of the crime of attempted second degree murder, as that crime had been defined by the Legislature in an act which became effective several days before this offense was committed. But such an affirmation, essentially based on the pragmatic notion that the jury reached the right result on the wrong instructions, simply does not comport with basic concepts of due process.[1] Elementary fairness requires that a conviction be set aside in a case tried by a jury when the jury instructions as to the essential elements of the crime are fundamentally inaccurate. Accordingly, I have no problem in reversing this conviction.
Nevertheless, I am concerned about the majority's statement in dicta that defendant can be retried only for attempted second degree murder. If the jury's verdict finding defendant guilty of attempted second degree murder is set aside (at defendant's request) because of fundamental trial error in instructing the jury as to the essential elements of that crime, it does not logically follow that defendant should be impliedly acquitted of attempted first degree murder when the same fundamental error occurred in instructing the jury as to the essential elements of that crime.[2] Compare Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); Price v. Georgia, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Inasmuch as adjudication of the issue of future prosecution is not necessary to the holding of this case, I simply point out my disagreement in a concurring opinion.[3]
*1333 DENNIS, Justice, dissenting.
I respectfully dissent.
In my opinion the only error committed during the aspect of the trial discussed by the majority was the judge's failure to instruct the jury correctly on the available verdicts. Defendant was validly charged with attempted first degree murder, and found guilty of attempted second degree murder, a constitutionally lesser included offense of the charged crime. Accordingly, defendant was afforded due process because he was given notice of the charge of which he was convicted. See State v. Booker, 385 So.2d 1186 (1980). The defendant was charged with knowledge of the correct definitions of attempted murder and second degree murder. His failure to timely object to the judge's having given erroneous definitions and verdicts to the jury should preclude our review of those errors.
NOTES
[1] Act 74 of the 1979 regular session of the Louisiana legislature became effective by signature of the governor on June 29, 1979.
[2] To facilitate ease of discussion hereafter the components of the respective definitions of first and second degree murder before and after the amendment, set out more fully above, will occasionally be referred to as restrictive specific intent killing, any specific intent killing and felony murder.
[3] The amendments of recent years have been in response to certain problems of statutory semantics which are only incidentally related to the instant case. See State v. Payton, 361 So.2d 866 (La.1978). See also Hancock, The Perils of Calibrating the Death Penalty Through Special Definitions of Murder, 53 Tul.L.Rev. 828, at page 845.
[4] In Booker, interpreting the law as it appeared prior to the most recent amendments, we held that where no charge was made nor evidence offered of the perpetration or attempted perpetration of one of the felonies enumerated in the second degree murder statute, a jury could not logically conclude that a defendant was guilty of attempted second degree murder after being charged with attempted first degree murder. That is, regardless even of any express designation by the legislature, attempted second degree murder was not a responsive verdict to a charge of attempted murder in the first degree, absent proof of felony.
[5] Ineffective assistance of counsel, for instance, has been held more properly raiseable by writ of habeas corpus. State v. Tucker, 332 So.2d 797 (La.1976); State v. Ross, 343 So.2d 722 (La.1977).
[6] We cannot say with certainty that the jury's entering of a verdict of attempted second degree murder resulted from a finding on their part that the defendant was as a matter of fact innocent of any specific intent killing. Rather, the possibility is that the jury, in opting to show mercy or leniency toward defendant, chose the lesser verdict knowing without having to be told that the penalty for attempted second degree murder is less than that for attempted murder in the first degree. The jury was aware of this alternative by reason of the judge's previously mentioned instruction to them regarding the list of responsive verdicts, including that of attempted second degree murder.
[1] The jury had been given an instruction that stated an incorrect definition of the essential elements of the offense of attempted second degree murder. Admittedly, there was no contemporaneous objection to the instruction, and this court has seldom, if ever, applied the plain error doctrine to jury instructions, the usual reasoning being that a defendant is more appropriately relegated to post-conviction proceedings to show ineffective assistance of counsel.

But this is not the usual case, and very few jury instructions are so prejudicial as to constitute plain error. Furthermore, the record suggests that defense counsel was adequately effective, except for one glaring mistake, and that the mistake was shared by the prosecutor and the trial judge. (The mistake was perhaps understandable, when one considers the newness of the pertinent legislative act and the fact that the statutory definitions of the various degrees of murder were in a constant state of flux for several consecutive legislative sessions.)
[2] One cannot logically analyze this verdict as indicating the jury did not find specific intent. The only reasonable explanation of the verdict is that the jury found specific intent to kill or inflict serious bodily harm, but preferred not to subject defendant to the penalty for first degree murder. If the incorrectly instructed jury had not found specific intent, it would necessarily have acquitted of both attempted first and attempted second degree murder.
[3] Since the evidence in this record suggests the absence of any of the four types of specific intent required for first degree murder in July, 1979, the prosecution will probably not charge defendant on retrial with first degree murder or attempted first degree murder. (The victim died 10 months later.) Nevertheless, prosecution for first degree murder should not be precluded merely because this conviction of a lesser offense was reversed.