652 So.2d 91 (1995)
STATE of Louisiana
v.
Lavell JYNES.
No. 94-KA-745.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 1995.
*92 Mark A. Marion, Destrehan, for appellant Lavell Jynes.
Harry J. Morel, Jr., Dist. Atty., Emile R. St. Pierre, Asst. Dist. Atty., Hahnville, for appellee State.
Before BOWES, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Lavell Jynes, appeals from his conviction of attempted second degree murder, a violation of La.R.S. 14:27 and 30.1, and attempted manslaughter, a violation of La. R.S. 14:31. We affirm.
Defendant was charged with two counts of attempted second degree murder. He was first tried on August 22, 1991 on both counts. During the trial, a mistrial was granted. On November 12, 1991, another jury trial commenced on the same charges. The jury returned a guilty verdict on one count of attempted second degree murder and the responsive verdict of attempted manslaughter on the second count. For his conviction of attempted second degree, the trial judge sentenced defendant to serve eighteen years at hard labor, with credit for time served. He was sentenced to nine years at hard labor, with credit for time served, for his conviction of attempted manslaughter. The sentences were to run concurrently.
At trial, the testimony reveals that at approximately 5:00 p.m. on December 28, 1989, an automobile containing some men, including defendant, Lavell Jynes, and his brother, Lenoris Jynes, drove past a group of young men. The group included Jerome Hill *93 and his nephew, Percy Hill. They were walking from the Boutte Project in St. Charles Parish. The vehicle stopped and defendant exited the car, aimed a gun at Jerome Hill, shot him several times and climbed back in the vehicle. The group of men ran from the site, scattering. However, Percy Hill grabbed a bottle and threw it at the defendant's car. Defendant got out the car again and shot Percy Hill in the leg. At that point, another car with two men in it drove up. The driver of the second car shot a gun into the air. The car containing Jynes fled the scene. Subsequently, the Hills were treated for their injuries. Defendant was arrested several months later.
Defendant testified that Jerome Hill threatened him with a rifle earlier in the day while defendant was talking to Hill's girlfriend. He also claimed that a few months earlier, the Hills shot at a vehicle he was driving. He admitted shooting Jerome and Percy Hill, but claimed that he believed that Jerome Hill was reaching for a gun from his jacket before the shot was fired. Defendant testified that he only shot Percy because Percy threw "something" toward him.
The witnesses for the state denied that anyone with the Hills had a firearm the night of the incident. State Trooper Edgar Clay testified that he received a report of prior shooting incident, but that at the time, defendant and the others with him stated that they did not know who fired the shots.
On appeal, defendant asserts that the jury was improperly charged as to the crime of attempted manslaughter. Defendant contends that the jury charge for attempted manslaughter contained a statement "or committed without any intent to cause death or great bodily harm." Defendant asserts this is prejudicial error because the crime of attempted manslaughter is a specific intent crime.
The state responds that defendant acquiesced to the charge following a discussion with the trial judge after he objected.
The record reflects that in the conference regarding the proposed jury charges, the judge stated that she would define attempt first, which requires specific intent to commit the crime intended. She stated that she would define attempted manslaughter as follows:
THE COURT:
Okay. The same thing with the definition of attempted manslaughter. Attempted manslaughter is an attempted homicide which would be second degree murder but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control or cool reflection. Any problem with that definition? Do you want to look at it?
Attempted manslaughter is an attempted homicide which would be second degree murder, but the offense is committed ... There is no use to tell them first degree murder because that doesn't fit the facts here. So, that's why I scratched that out.
MR. MARINO:
That's fine.
Defense counsel agreed with the trial judge's intended charges. However, when the judge instructed the jury regarding the definitions of the offenses and the responsive verdicts, she stated as follows, in pertinent part:
In this case Lavell Jynes is charged with two counts of attempted second degree murder, one of Jerome Hill and one of Percy Hill. An attempt is defined as follows: A person who has a specific intent to commit a crime and who does or omits an act for the purposes of intending directly toward the accomplishing of his object is guilty of an attempt to commit the crime intended. It's immaterial whether under the circumstances the defendant would have actually accomplished his purpose. Mere preparation to commit a crime is not sufficient to constitute an attempt.
Attempted second degree murder is the attempted killing of a human being when the offender has a specific intent to kill. If you are convinced beyond a reasonable doubt that the defendant is guilty of attempted second degree murder then your verdict should be guilty. If you are not convinced that he's guilty of attempted second degree murder, you may find him guilty of a lesser offense. We call these *94 lesser offenses responsive verdicts. The responsive verdicts to second degree murder are guilty, guilty of attempted manslaughter, guilty of aggravated battery, and not guilty.
Attempted manslaughter is an attempted homicide which would be second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, or committed without any intent to cause death or great bodily harm.
After the jury charges, defense counsel objected to the charge for attempted manslaughter because it included a statement that "or" the offense was "committed without any intent to cause death or great bodily harm". Following the objection, a discussion ensued as follows:
MR. MARINO:
In reading this, I am not sure, responsive verdicts, attempted manslaughter, I am not sure what you said. The record should reflect manslaughter is
THE COURT:
Well, we went through that at the charge conference before we started.
MR. MARINO:
You put manslaughter, but you never defined attempt.
THE COURT:
I already defined attempt right here.
MR. MARINO:
Right here, but defined attempted second degree murder, but not the attempt statute.
THE COURT:
Attempted manslaughter is an attempted homicide which would be second degree murder, but the offense if committed in sudden passion or heat of blood immediately caused by provocation.
MR. CHAMPAGNE:
I think she said that.
THE COURT:
Would you read it back to us, please. We'll just check it and see. We need to be sure.
MR. MARINO:
I have to object to it. I will leave it in and note my objection. I have to object to it or waive my right.
THE COURT:
Okay.
(Bench conference concluded)
THE COURT:
We have a little bit of confusion over my definition of attempted manslaughter, and so at this time I'm going to redefine it and I hope that I'll clarify it for you.
Would you approach the bench?
(Bench conference held outside of hearing of the jury)
THE COURT:
Do I understand that your request is for me to exclude great bodily harm from the definition?
MR. MARINO:
That's correct.
THE COURT:
Okay.
MR. CHAMPAGNE:
No.
MR. MARINO:
To leave this part out, without intent to cause death or great bodily harm, but then you set up a situation
THE COURT:
I want to be sure it is your request.
MR. MARINO:
No, leave it in.
MR. CHAMPAGNE:
Give me a moment.
MR. MARINO:
If I say it is, I
MR. CHAMPAGNE:
Well, manslaughter could be homicide
MR. MARINO:
Attempted manslaughter.
MR. CHAMPAGNE:
Where there is no intent to cause death
MR. MARINO:
But it should be not guilty.

*95 THE COURT:
I think technically it belongs in, but if you request me to leave it out, I will leave it out of my instructions.
MR. MARINO:
Then I am not requesting you leave it out.
THE COURT:
Okay.
MR. CHAMPAGNE:
I think it is fair.
MR. MARINO:
If I say take it out, the problem is it will be confused or
THE COURT:
The difference is, if is wrong to leave it in and you have requested me to take it out, then you're not going to get a reversal.
MR. MARINO:
Maybe, just leave it like you had it. I think if you clarify it, it will be a problem.
THE COURT:
Okay.
(Bench conference concluded)
THE COURT:
Attempted manslaughter is an attempted homicide which would be second degree murder, but the offense if committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection, or committed without any intent to cause death or great bodily harm.
Okay. Thank you. Mr. Early, you can stay with us and receive your certificate and your check, and the rest of you, let us know when you have reached a verdict.
(Jurors are removed)
During their deliberations, the jury requested that the trial judge define attempted manslaughter and aggravated battery. The trial judge repeated the same definition of attempted manslaughter, which included the "without intent" statement.
Specific intent to commit a crime is an element of an attempted offense. La R.S. 14:27. Thus, specific intent to kill is an element of the crime of attempted manslaughter. State v. Scott, 490 So.2d 396, 403 (La.App. 5th Cir.1986); State v. Turner, 440 So.2d 834, 836 (La.App. 2nd Cir.1983).
The charge in this case included the definition of "attempt" with the specific intent language. The attempted second degree murder charge also included the specific intent language. However, the charge for the responsive verdict of attempted manslaughter does not specifically state that attempted manslaughter requires the specific intent to kill. In addition, the charge erroneously includes a definition of attempted manslaughter as "an attempted homicide ... committed without an intent to cause death ..." (Emphasis added).
A verdict will not be set aside because of an objection to a portion of the trial court's charge unless such portion, when considered in connection with the remainder of the charge, is shown to be erroneous and prejudicial. State v. Broussard, 202 La. 458, 12 So.2d 218, 220 (1942). Generally, a party may not assign as error a complaint as to a jury charge in the absence of a contemporaneous objection to allow the judge to correct the error. La.C.Cr.P. art. 801. See also: La.C.Cr.P. art. 841.[1] In this case, defense counsel objected to the charge, but allowed the charge to stand after it was first read because he was concerned that a clarification attempt would confuse the jury. After the conviction, defendant filed a motion for new trial. In his argument for new trial, however, he argued that the jury charge error may have led the jury to believe that they did not need specific intent to convict on the attempted manslaughter charge. The trial judge denied the motion for new trial, deciding that the decision by counsel to allow the charge to stand at trial was trial strategy, as she was willing to give whatever change on attempted manslaughter that defense counsel wanted.[2] Although the charge was allowed *96 to stand, defendant did not agree with the charge. Thus, we find that there was a contemporaneous objection preserving the issue for appeal. The next question is whether the instruction giving an erroneous definition of the offense is harmless error, or whether it requires a reversal and remand for a new trial.
In State v. Cavazos, 610 So.2d 127 (La. 1992), the bill of information which was read to the jury contained an erroneous definition of the offense. The prosecutor and defense counsel made erroneous reference to specific intent and a general charge included an incorrect instruction on second degree murder which defined the offense in terms of a specific intent to kill or inflict great bodily harm. The Louisiana Supreme Court again recognized that, while there is no general plain error rule in this state and the contemporaneous objection rule was not overruled in State v. Williamson, 389 So.2d 1328 (La. 1980), "a substantial probability that jurors may have convicted the defendant under an incorrect definition of the crime justifies setting aside a conviction on due process grounds even in absence of a contemporaneous objection." Cavazos at 128. In Cavazos, the conviction was not set aside because the trial judge had explicitly instructed the jury at the close of the case that a conviction for attempted second degree murder required a finding of specific intent to kill. Further, the Cavazos court found that the jury could have determined that defendant intended to kill the victim and that defendant failed to show a substantial probability that he was deprived of a reliable determination of the specific intent element of the offense.
In June of 1993, the United States Supreme Court decided Sullivan v. Louisiana, ___ U.S. ___ ___ _ ___, 113 S.Ct. 2078, 2082-2083, 124 L.Ed.2d 182 (1993), which addressed the issue of whether a constitutionally deficient reasonable doubt instruction may be harmless error. The trial judge, in his instructions to the jury, gave a definition of "reasonable doubt" that was essentially identical to the one held unconstitutional in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The jury rule, State v. Williamson, 389 So.2d 1328, found defendant guilty of first degree murder. The judge thereafter sentenced defendant to death, in accordance with the jury's recommendation. In upholding the conviction on direct appeal, the Louisiana Supreme Court held that the erroneous instruction was harmless beyond a reasonable doubt. See State v. Sullivan, 596 So.2d 177 (La. 1992). The court thereafter upheld the conviction but remanded for a new sentencing hearing because of ineffectiveness of counsel at the sentencing phase. The United States Supreme Court granted certiorari, ___ U.S. ___, 113 S.Ct. 373, 121 L.Ed.2d 285 (1992), to decide whether the erroneous reasonable doubt instruction was harmless. The Supreme Court discussed the relationship between the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict. The court thereafter discussed the proper role of an appellate court engaged in the harmless error analysis, enunciated in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court concluded that "the essential connection to a `beyond-a-reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings." It further reasoned that since there was no jury verdict within the meaning of the Sixth Amendment, the premise for a harmless error analysis was absent. Moreover, the denial of the right to a jury verdict of guilty beyond a reasonable doubt, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as `structural error'", which defies analysis by harmless error standards. The Supreme Court thereafter reversed the judgment of the Louisiana Supreme Court and remanded the matter for further proceedings. See State v. Sullivan, 623 So.2d 1315 (La.1993).
In State v. Holmes, 620 So.2d 436 (La.App. 3rd Cir.1993), writ denied, 626 So.2d 1166 (La.1993), the third circuit addressed the identical issue that is before us. There, the jury was incorrectly charged that the crime of attempted second degree murder included the "intent to inflict great bodily harm". Although *97 there was sufficient evidence to convict defendant of attempted second degree murder, the erroneous jury instruction was found to be reversible error. In Holmes, the court found that it was questionable whether the jury would have convicted defendant of second degree murder had it known that it had to find a specific intent to kill. The court analyzed similar cases, including Williamson and stated that Williamson was closer to its facts. In Holmes and Williamson, the defendants were shooting at a moving car containing several people. The court in Holmes distinguished previous similar cases in which the courts did not find the error reversible, noting that the misapplication of the law was not apparent under those particular facts, unlike its case and the Williamson case. The court concluded that it was questionable whether the jury would have convicted the defendant, Holmes, had the jury known it had to find a specific intent to kill, not a specific intent to inflict great bodily harm. The court stated that even though the evidence was sufficient to convict Holmes, that fact does not convert the trial into a fair one.
In a subsequent Third Circuit case, State v. Porter, 626 So.2d 476, 479 (La.App. 3rd Cir.1993), the court, citing Holmes, again reversed a jury verdict based on the incorrect instructions for attempted second degree murder and attempted manslaughter, as in the case before us. The Porter court concluded that, like in the Holmes case, the facts indicated that there was a substantial probability that the jurors may have convicted defendant, Porter, under an incorrect definition of the crime.
In State v. Pyke, 93-1506 (La.App. 3rd 5/4/94), 640 So.2d 460, 465 (La.App. 3rd Cir. 1994), rendered after the Louisiana Supreme court decided Sullivan, the third circuit thoroughly reviewed the jurisprudence on contemporaneous objection issues, but also discussed the applicability of the harmless error doctrine in instructional error cases. The court stated:
An instruction which misleads or confuses the jury as to an essential element of the offense is constitutionally infirmed. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Thus, "[w]hat the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause." Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). The state always bears the burden of proving all elements of the offense charged; and it must persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements. Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281 (1977); Leland v. Oregon, 343 U.S. 790, 795, 72 S.Ct. 1002, 1005, 96 L.Ed. 1302 (1952). In Re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); Cool v. United States, 409 U.S. 100, 104, 93 S.Ct. 354, 357, 34 L.Ed.2d 335 (1972) (per curiam). Due process also assures defendant "the right to have the jury, rather than the judge, reach the requisite finding of `guilty.'" Sullivan v. Louisiana, supra.
Although, the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) recognized "certain constitutional errors, no less than other errors, may have been `harmless' in terms of their effect on the factfinding process at trial, ... some errors though will always invalidate the conviction." In deciding which category the present error falls, Sullivan teaches our inquiry "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered," but rather whether the guilty verdict actually was not attributable to the error. As the United States Supreme Court explained this "must be so, because to hypothesize a guilty verdict that was never in fact renderedno matter how inescapable the findings to support that verdict might be would violate the jury-trial guarantee." Sullivan v. Louisiana, supra [___] at U.S. [___], 113 at S.Ct. 2082. In assessing whether a particular defendant's due process rights were violated, an appellate court should not engage in speculation about a hypothetical jury's finding on an essential element of the offense charged.

*98 The "specific intent to inflict bodily harm" error in this case must be likened to the "beyond-a-reasonable doubt" error which the United States Supreme Court in Sullivan determined is "structural" and vitiates all the jury's findings.
Evident from our attempts to distinguish the holdings in prior cases, determining what a reasonable jury might have done in instructional error cases involving the definition of the crime necessarily interjects speculation in the reviewing process and results in "the wrong entity judg[ing] the [defendant's guilt]." Sullivan v. Louisiana, supra. Classifying the erroneous instruction given in this case as a "structural error" does not require abandonment of the statutory contemporaneous objection rule nor adoption of a plain-error rule generally applicable in criminal cases. Rules generally are not without exceptions; and they must yield to state and federal due process requirements. The Williamson exception (though adequate to protect a defendant's due process rights) must be applied in all cases involving these errors without "weighing the evidence" or resorting to a "case by case" factual analysis. The concomitant due process right to "trial by jury" prevents use of the latter approaches on appellate review.
Pyke's conviction and sentence must be reversed sooner or later. Our decision to entertain the assigned error on appeal is consistent with the Williamson holding and the more recent cases applying it. Notwithstanding the holdings in [State v.] Belgard [410 So.2d 720] [(La.1982)], [State v.] Thomas [427 So.2d 428] [(La.1982)], and [State v.] Latiolais [453 So.2d 1266] [(La.App. 3d Cir.1984)], we conclude instructional errors involving the very definition of the crime charged so threatens a defendant's basic due process rights that they compel reversal of Pyke's conviction and sentence.
Although our case does not involve the question of whether the issue has been preserved for appeal since we have concluded that defendant made a contemporaneous objection, we are mindful of the due process considerations discussed in Williamson, Porter, Holmes, Sullivan and Pyke. And, while we are mindful that the United States Supreme Court in Sullivan held that an erroneous jury instruction on reasonable doubt is not subject to harmless error, we do not agree with the court in State v. Pyke that it is applicable in all instructional error cases.
Unlike Williamson, Porter, Holmes, and Pyke, our facts show that defendant pulled a gun and shot directly and specifically at Percy Hill, after specifically shooting at his uncle. This was not a case of the shooter aiming at a group of people, or that there was any question as to who was the intended victim. Unlike Holmes, it is not "questionable that the jury would have convicted defendant had it known it had to find a specific intent ..." Thus, we find that the instruction is subject to the harmless error review.
In determining harmless error, the proper analysis is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to the error". Sullivan v. Louisiana, ___ U.S. at ___, 113 S.Ct. at 2081; State v. Code, 627 So.2d 1373 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
In the instant case we find that the guilty verdict actually rendered was "surely unattributable to the error". Consequently, we find that the erroneous jury instruction is not a basis to reverse the conviction.
We have also reviewed the record for error patent pursuant to La.C.Cr.P. art. 920 which provides:
"The following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short *99 form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
A review of the record reveals one error patent. The minute entry and transcript of the sentencing indicate that the trial court ordered that defendant be given credit for time served, as required by La. C.Cr.P. art. 880. However, the commitment form does not include this credit. Where there is a discrepancy, the transcript prevails. See State v. Lynch, 441 So.2d 732 (La.1983); State v. Richard, 525 So.2d 1097, 1101 (La.App. 5th Cir.1988).
Accordingly, the conviction, and sentence of defendant is hereby affirmed.
AFFIRMED.
BOWES, J., concurs in part and dissents in part.
BOWES, Judge, concurring in part and dissenting in part.
I concur with the affirmation of the majority of the defendant's conviction for attempted second degree murder and the sentence imposed therewith. However, I cannot agree with the finding that the conviction for attempted manslaughter should also be affirmed and respectfully dissent from that holding.
As stated by the majority opinion, the jury charge defining the elements of attempted manslaughter was erroneous, and misstated what the state needed to prove to allow the jury to find the defendant guilty beyond a reasonable doubt. The opinion further notes that in Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 373, 121 L.Ed.2d 285 (1992) the United States Supreme Court concluded that "the essential connection to a `beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates all the jury's findings" and that the court then reasoned that since there was no jury verdict within the meaning of the Sixth Amendment, the premise for a harmless error analysis was absent. I find that in this case the elements of the crime were incorrectly defined and there, likewise, is no valid jury verdict within the meaning of the Sixth Amendment
Accordingly, I would reverse the defendant's conviction for attempted manslaughter and remand this case for further proceedings. I respectfully dissent to the affirmation of the majority in this respect.
NOTES
[1] "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."
[2] When the instruction is "of such importance and significance as to violate fundamental requirements of due process", in some instances the error may be raised for the first time on appeal, regardless of the contemporaneous objection rule, State v. Williamson, 389 So.2d 1328, 1331 (La.1980).