1WILLIAM H. BYRNES III, Chief Judge.
On April 15, 1999, the defendant-appellant, Tory Boatner, was indicted for the second-degree murder of Percy Brown. The defendant pled not guilty at his arraignment on April 20, 1999. Defendant filed discovery and suppression motions on April 28, 1999. Motion hearings were held on May 14, 1999, June 2, 1999, June 10, 1999 and June 25, 1999. The trial court denied defendant’s motions to suppress identification and evidence. The defendant was found guilty as charged after a jury trial on August 4, 1999. On the same day, the defendant waived delays and was sentenced to life imprisonment at hard *844 labor without benefit of probation, parole or suspension of sentence.

STATEMENT OF FACT

Tonette Johnson and Roxanne Robinson were at a lounge called “Lodie’s” in the early morning hours of February 17, 1999, when they witnessed a shooting which resulted in the death of Percy Brown. Johnson and Robinson were inside the lounge when they witnessed a fight between Christine Boatner, the defendant’s sister, and a girl named Keisha who was a friend of Jéwel Brown, the victim’s sister. While Christine was on top of Keisha, one of Christine’s brothers kicked Keisha in the head. Jewel Brown, the victim’s sister, was being held against the wall by someone else. The victim, Percy Brown, was at the bar while the fight was going on. The lounge’s bouncers broke up the fight and told the Boatners to leave. Percy | ¡walked over to the area where the fight occurred and got his sister. Percy and his sister, Jewel, left the bar immediately after the defendant left with his family. Tonette and Roxanne walked out behind Percy and Jewel. When they went outside, they noticed that Christine Boatner was standing in the middle of the street, taunting Keisha. Percy.was arguing with his sister, trying to convince her to leave. She did not want to leave her friend, Keisha. Christine took out a belt and hit Keisha across the back with the belt. Tory and Christopher, Christine’s brothers, were standing outside and then suddenly disappeared. Percy and Jewel began walking towards Percy’s vehicle. Tory and Christopher reappeared, and Tory had a gun in his hand. Christopher kept asking Tory for the gun but Tory refused to give it to him. Tory then started firing the gun. Percy pulled Jewel towards the car and told her to run. Tonette and Roxanne heard about five shots and then saw Percy fall on the ground. Tory, Christopher, Christine, and another female ran down Lafreniere Street towards Paris Avenue. Tonette and Roxanne spoke with the police a few days later. Roxanne gave the officers the defendant’s name. Tonette and Roxanne identified the defendant in a photographic lineup as the person who shot Percy Brown.
Detective Andre Gilds investigated the homicide. He spoke with Tonette Johnson and Roxanne Robinson. Videotaped statements were taken from both women. The officer presented photographic lineups to Tonette and Roxanne who both identified the defendant as the perpetrator. Detective Gilds obtained an arrest warrant for the defendant who was later arrested at the Family Inn Motel on Chef Menteur Highway.
Officer Gerard Winbush, a firearms examiner with the crime lab, examined the five casings found on the scene and the bullet retrieved during the autopsy on the victim. Officer Winbush determined that the five casings, hall nine millimeter, were fired from the same weapon. The bullet was also a nine-millimeter.
Dr. Richard Tracy, a forensic pathologist, performed an autopsy on the victim. The victim suffered five gunshots from the rear. One wound to the back of the head was instantaneously fatal. One wound to the arm was superficial and three other wounds to the chest and abdomen were not immediately fatal but death would have resulted from internal bleeding.
Timothy Stratton, a paramedic, was called out to the scene. When he arrived, he observed a black male lying face down on the ground. The victim suffered several gunshot wounds and had no signs of life.
Bernice Boatner testified as a character witness for her son, the defendant. She stated that the defendant lived with her and that she had seen him on Mardi Gras day, the day before the shooting.
*845 Tory Boatner testified on his own behalf and denied that he shot the victim. He stated that he did not get involved in the fight and did not have a weapon. He testified that he heard a gunshot as he walked out of the club and ran. He did not see the victim in the bar or outside the lounge. The defendant admitted to prior convictions for possession of cocaine and carrying a concealed weapon. He acknowledged that he was on probation at the time of the shooting.

ERRORS PATENT

A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER 1

In his first assignment of error, the defendant contends that the trial court erred when it failed to include definitions of second-degree murder and manslaughter in the charge to the jury. A review of the jury instructions reveals that the trial court failed to include instructions on the offenses of |4second-degree murder and manslaughter. However, • defendant did not object to the trial court’s failure to include the definitions in the jury charge.
La.C.Cr.P. art. 801(C) provides that “[a] party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error.” Defendant argues that this court should consider his claim of error anyway. Any deviation from the general rule requiring an objection to a jury instruction rests on State v. Williamson, 389 So.2d 1328 (1980), where the Louisiana Supreme Court departed from the general rule that an alleged error in instructing the jury is not reviewable absent an objection. In Williamson, the trial court erroneously instructed the jury as to the evidence required to find the defendant guilty of the crime charged, attempted first degree murder, and a responsive verdict, attempted second degree murder. Both the first degree and second-degree murder statutes had been amended, which amendments had taken effect nineteen days prior to the offense. However, the trial court, along with the prosecutor and counsel for the defendant, incorrectly assumed that the law as it appeared prior to the amendments was still in effect at the time of the offense. The trial court based its jury instructions on the old statutes. The State correctly noted that the defendant had failed to object to the instruction. The Louisiana Supreme Court held that because the asserted error involved “the very definition of the crime of which defendant was in fact convicted,” it would review the claim of error.
As this Court explained in State v. White, 96-1534 (La.App. 4 Cir. 5/21/97), 695 So.2d 1020, 1025-1026:
In Louisiana, the accused is statutorily entitled to have the trial court instruct the jury as to the law on the charged offense and on any responsive |Boffenses. La.Code Crim. Proc. articles 803, 814, 815; State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied, Elaire v. Blackburn, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983). In the case at bar, the defendant was charged with second-degree murder. Article 814 provides an exclusive list of responsive verdicts to that charge, the only responsive verdicts to second degree murder are guilty, guilty of manslaughter, and not guilty. The trial court was required only to instruct the jury on those three responsive verdicts. Mr. White’s failure to object to the jury instructions generally would preclude appellate review of this alleged error. La.Code Crim. Proc. art. 841. However, State v. Williamson, 389 So.2d 1328 (La.1980), the Louisiana Supreme Court re *846 viewed the defendant’s assignment of error concerning improper jury instructions, despite his failure to object to the instructions at trial. The court noted that “the asserted error involve[d] the very definition of the crime of which defendant was in fact convicted. Such an error is of such importance and significance as to violate fundamental requirements of due process.” Id. at 1331. The court held that it could consider the trial court’s alleged failure to instruct the jury properly on the elements of attempted first degree murder and attempted second degree murder where the record bore full and sufficient proof of error which no posterior hearing could augment. Id. Because error alleged by Mr. White, like the error alleged in Williamson, involves the definition of the crime for which he was convicted and full and sufficient proof will be evident from the record, we will consider this alleged error on appeal.
White, supra, p. 11, 695 So.2d at 1025-1026.
In a recent case from this court, State v. Jarvis, 2001-1277 (La.App. 4 Cir. 2/13/02), 811 So.2d 38, the trial court failed to give a jury instruction as to the State’s burden of proof as to constructive possession of a firearm by a convicted felon, as elaborated by a decision rendered by the Louisiana Supreme Court two months before defendant’s trial. Defense counsel failed to object to the instruction. This court cited Williamson in holding that the instruction went to the very definition of the |ficrime, and therefore it would consider the assignment of error. Jarvis is similar to Williamson, in that in each case both counsel and the court were apparently unaware of, respectively, a recent judicial pronouncement and a recent legislative act, both of which the respective courts held went to the very definitions of the crimes of which the defendants were convicted.
The jury charge error in the instant case is more sweeping than any this Court has been able to find in any reported case. According to the transcript we have before us the jury was not instructed on the definitions of second-degree murder and manslaughter. In fact, the jury charges not only fail to explain or set forth any element of any crime, but they also fail to even name any crime with which the defendant was charged or any responsive verdict. Whether this is because of egregious error on the part of the trial judge, or whether there is a gap in the transcript similar to other transcript problems coming out of this section of the Criminal District Court, we are unable to determine.[1] Regardless, the result is the same — it does not appear in the record and this is a Court of record. How can a jury find the defendant guilty of a crime without having any idea of what constitutes such a crime or any of the responsive verdicts? Thus, this case is distinguishable from those harmless error cases where the jury charge definition of the crime and/or responsive verdicts may have been imperfect, but the record is clear that no reasonable juror would have been misled by the erroneous portion of the instruction. The failure in the instant case to provide any guidance to the jury on the elements of the offense charged and the responsive verdicts is so fundamental and sweeping in scope that it cannot be harmless error, nor ignored by this Court even in the absence of a contemporaneous ob *847 jection. |7For the same reason, prejudice to the defendant may be presumed. The only proper remedy is to vacate the defendant’s conviction and remand for further proceedings.

ASSIGNMENT OF ERROR NUMBER 2

In this assignment, the defendant contends that the appellate record is so incomplete as to deprive him of his constitutional right of appeal. However, as the remedy for this error, remand, is the same remedy that this Court has already determined to afford the defendant in connection with his first assignment of error, we need not reach the matter.

DECREE

Having found merit with the defendant’s first assignment of error, the defendant’s conviction and sentence are vacated and the matter remanded for further proceedings.

CONVICTION AND SENTENCE VACATED; CASE REMANDED.

JONES, J., concurs.
MURRAY, J., concurs in result.

. The transcript jumps inexplicably from where the court is delivering the general portions of the jury charge to the verdict. There is no indication that the jury left to deliberate which seems inconsistent with the rest of the transcript where all other breaks in the proceedings are indicated in the transcript.