1BYRNES, C.J.,
dissenting with reasons.
I respectfully dissent based on my conclusions that the transcript is adequate to review the defendant Tory Boatner’s conviction on appeal.
This court has held that a complete appellate review of a conviction and sentence can be accomplished, even when there are missing portions of the trial record. See, e.g., State v. Cooley, 98-0576, p. 9 (La.App. 4 Cir. 11/17/99), 747 So.2d 1182, writ denied, 2000-0225 (La. 12/15/00), 777 So.2d 475; State v. Allen, 95-1754, p. 11 (La.9/5/96), 682 So.2d 713, 722. A defendant is not entitled to relief absent a showing of prejudice based on the missing portions of the transcripts. Id.; State v. Castleberry, 98-1388, p. 29 (La. 4/13/99), 758 So.2d 749, 773, certiorari denied sub nom. Castleberry v. Louisiana, 528 U.S. *855 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); State v. Thomas, 92-1428, 637 So.2d 1272 (La.App. 4 Cir 5/26/94), certiorari denied sub nom. Thomas v. State, 514 U.S. 1054, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995).
La.C.Cr.P. art. 843 requires, in all felony cases, the recording of “all the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel.”
| ¡¿failure of the trial court to transcribe all portions of the trial record is not preserved for appeal without contemporaneous objections. State v. Gibson, 99-2827 (La.App. 4 Cir. 4/11/01), 785 So.2d 213, writ denied, 2001-1458 (La. 4/19/02), 813 So.2d 418. The requirement that objections and arguments be recorded will normally only apply to objections" made in open court and arguments of counsel in closing. State v. Hoffman, 98-3118 (La. 4/11/00), 768 So.2d 542, supplemented 2000-1609 (La. 6/14/00), 768 So.2d 592, certiorari denied sub nom. Hoffman v. Louisiana, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000). See also State v. Wise, 93-0105 (La.App. 4 Cir. 9/29/94), 644 So.2d 230, writ granted in part and remanded on other grounds, 94-2993 (La. 12/6/96), 684 So.2d 408.
The need for the recordation of evidence upon which the judgment is based is not absolute; it is the court’s ability to review and demonstration of prejudice that are at issue. State v. LaCaze, 99-728 (La.App. 3 Cir. 12/8/99), 759 So.2d 773, writ denied 2000-0058 (La. 10/6/00), 770 So.2d 359.
In State v. Hawkins, 90-1235 (La.App. 4 Cir. 9/15/95), 667 So.2d 1070, writ granted, 96-0766 (La.9/13/96), 679 So.2d 97, affirmed 96-0766 (La.1/14/97), 688 So.2d 473, the lack of transcripts of the opening statements, closing arguments, and jury instructions did not render the trial record inadequate for full appellate review of the defendant’s conviction, where the missing portions of record did not pertain to evi-dentiary matters, and where the minute entries did not indicate that the defendant raised any objections during the missing portions of the trail.
In State v. Francis, 345 So.2d 1120 (La. 1977), certiorari denied sub nom. Francis v. Louisiana, 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977), under constitutional and statutory provisions, the Supreme Court held that a review in criminal cases is restricted to questions of law based upon defense objections and | ..¡assignments of error, and thus the record, which included the transcript of all the evidence, was adequate for full review of the defendant’s conviction of distribution of heroin despite the failure of the appellate record to contain the voir dire examination of the jurors, the district attorney’s opening statement, closing arguments and jury charges, during which no objections were made.
In State v. Valentine, 570 So.2d 533 (La.App. 4 Cir.1990), the defendant was not denied his right to an effective appeal on the basis that this court refused to order supplementation of the record with the transcript of jury charges. The minute entry of the trial did not reflect any objections made during the jury charge portion of trial and, as a result, refusal to order the production of the transcript of the jury charges did not impair the appellate counsel’s ability to perform his duty because he would be estopped from raising any claims as to any errors during the jury charges.
In State v. Bridges, 545 So.2d 655 (La.App. 5 Cir.1989) writ denied, 551 So.2d 1316 (La.1989), the unavailability of the transcript for portions of trial, including the testimony at jury selection, the State’s opening statement, the jury charges, and *856 the closing arguments, constituted error, but did not mandate a mistrial or a new trial, where no objections were made during those portions of the trial.
The jurisprudence shows that omissions from the record do not necessarily constitute reversible error but can be harmless error. The defendant must show that he was prejudiced by the omitted portions of the transcript.
In the present case, the defendant did not raise as issues on appeal the denial of his suppression motions or the trial court’s ruling on the lack of exculpatory evidence in the witnesses’ videotaped statements. The defendant has not shown prejudice based upon the pretrial transcripts.
| ¿The portions of the trial transcript which are described as inaudible do not preclude a complete appellate review. Several “inaudible” designations were made during the examination and cross-examination of the witnesses but these designations did not prevent a complete review of evidence presented by the State and the defendant. The “inaudible” designations occurred when the witnesses were repeatedly asked for the same information. Where the testimony was repetitious, the defendant was not prejudiced by the inaudible portions of the transcript.
The majority of the appellate panel provides “inaudible” designations that occurred when the State introduced its evidence into the record and during the State’s closing argument.
The majority provides a portion of the questioning of Tonette Johnson when the State was showing the witness various exhibits as follows:
Q. (Inaudible) Can you identify State’s Exhibit 10?
A. (Inaudible) 10
Q. (Inaudible)
A. Yes.
Q. (Inaudible) State’s exhibit 11?
A. (Inaudible)
Q. (Inaudible) exhibit?
A. Yes.
Q. I’ll show state’s 12. Do you recognize (Inaudible)
A. Yes, victim (Inaudible)
Q. This is the State’s Exhibit (Inaudible). Do you also recognize this lineup?
Shortly thereafter, the witness was excused but remained under subpoena. Then the State introduced the State’s exhibits that were admitted. That portion of the transcript provided:
MR. DEBLANC:
Just one second, Your Honor.
Your Honor, at this time, the State has no further witnesses. However, at this time, we would offer, file, and introduce into evidence State’s Exhibit 1 which is the blowup, the daytime blowup of outside Lodie’s.
|kTHE COURT:
Any objection to State’s Exhibit 1?
MR. JUPITER:
No, Your honor.
THE COURT:
Admitted.
MR. DEBLANC:
State’s Exhibit 2 which is the diagram of the scene.
MR. JUPITER:
No objection.
THE COURT:
Admitted.
MR. DEBLANC:
State’s Exhibit 3 which is the daytime shot of PJ’s.
MR. JUPITER:
No objection.
THE COURT:
*857 Admitted.
MR. DEBLANC:
State’s Exhibit 4 is another photograph, or blowup of where the victim’s body was found.
MR. JUPITER.
No objection.
MR. DEBLANC.
State’s Exhibit 5, the photograph of the defendant’s {sic} body at the scene.
MR'. JUPITER:
No—
MR. DEBLANC:
I’m sorry, the victim’s body at the scene. I apologize.
MR. JUPITER:
No objection.
MR. DEBLANC:
State’s Exhibit 6 which is a closeup of the victim’s body.
MR. JUPITER:
No objection.
MR. DEBLANC:
State’s Exhibit 7 which is the photographic lineup shown to Tonette Johnson.
MR. JUPITER:
No objection.
MR. DEBLANC:
State’s Exhibit 8 which is the arrest warrant.
MR. JUPITER:
We object on grounds to relevance. Submitted for Records purposes only, there’s no objection.
THE COURT:
Record purposes only.
MR. DEBLANC:
That’s fíne with me, Judge.
THE COURT:
State’s Exhibit 4, 5, 6, and 7 are admitted. State’s Exhibit 8 for Record purposes only.
MR. DEBLANC:
State’s Exhibit 9 which is the photographic lineup shown to Roxanne Robinson.
|rMR. JUPITER:
No objection.
MR. DEBLANC:
State’s Exhibit 14, the photograph of the victim’s head.
MR. JUPITER:
Your Honor, we object to that. It’s repetitive
THE COURT:
Note defense’s objection to State’s Exhibit 14, and 9 admitted.
MR. DEBLANC:
State’s Exhibit 15 whish were the victim’s hat and beads.
MR. JUPITER:
No objection.
THE COURT:
Admitted.
MR. DEBLANC:
State’s Exhibit 17 which are the five nine millimeter shell casings recovered from the scene.
MR. JUPITER:
No objection.
THE COURT:
Admitted.
MR. DEBLANC:
For Record purposes only, State’s Exhibit 18 which are the evidence cards.
THE COURT:
(Inaudible.)
MR. JUPITER:
No objection.
THE COURT:
Admitted.
*858 MR. DEBLANC:
State’s Exhibit 19, for Record purposes only, the crime lab report.
MR. JUPITER:
No objection for Record purposes only.
THE COURT:
Admitted.
MR. DEBLANC:
State’s Exhibit 20 which is the bullet recovered from the victim’s body.
MR. JUPITER:
No objection.
THE COURT:
Admitted.
MR. DEBLANC:
State’s Exhibit 21 which is the autopsy diagram.
MR. JUPITER:
No objection.
THE COURT:
Admitted.
MR. DEBLANC:
And State’s Exhibit 22 which is the wedding photo of the victim.
MR. JUPITER:
No objection.
THE COURT:
| ./Admitted.
Anything else by the State?
MR. DEBLANC:
No, Your Honor....
After a discussion about a lunch break, the State rested its case and reserved its right to rebuttal.
Any omission from the inaudible portion of Tonette Johnson’s testimony concerning the exhibits is harmless error because the transcript contains the introduction of the State’s exhibits and the defense’s objections that are preserved for the record. Further, the transcript provides the State and the Defense’s exhibit list as part of the index. In the August 4, 1999 minute entry of the trial, the minute clerk detailed a list of the State and the defense’s exhibits, as well as whether there was an objection, and whether the exhibits were admitted.
The majority of this panel transcribed a portion of the State’s closing argument that contains inaudible parts. The trial minute entry provides a list of the occurrences at trial, including a record of the attorney’s closing arguments. No objections were noted in the minute entry.
The trial testimony establishes the events of the February 17, 1999 murder of Percy Brown (a/k/a “Bingo”).[1]
IsThe evidence and testimony sustain the defendant’s conviction. Two eye-witnesses testified that Tory Boatner was the shoot *859 er. The two witnesses testified at trial that they knew the Boatners previously. One witness was introduced to Tory Boat-ner the day before Mardi Gras at a beauty parlor. The other witness testified that she saw Tory Boatner three times before the morning of the murder. She knew Tory Boatner’s sister for three or four years, and had been introduced to Tory Boatner a week or two before the murder. She also saw Tory Boatner once before at the club, Lodies’s, and once at “rehab.”
Prior to trial both witnesses identified Boatner’s picture in the photographic lineups shown to the two witnesses at different times. The two witnesses also gave the police taped statements. They were close to the intersection where the shooting took place when both witnesses were walking to a parked vehicle. Both witnesses were familiar with Tory Boatner before the shooting and were certain when identifying him in the photographic lineups and during the trial.
|9The State’s expert in the area of firearms and velocity testified that the five casings found at the scene were nine-millimeter casings that were fired from the same gun. The bullet retrieved from the victim was also a nine-millimeter. The State’s expert in forensic pathology performed the autopsy and testified that the victim suffered five gunshot wounds from the rear.
Bernice Boatner testified on behalf of her son, Tory. She saw him Mardi Gras day and described what he was wearing. The description did not match the clothing *860 described by the two eye-witnesses. Her three children came home on Wednesday after Mardi Gras. She testified that she knew her son was wanted by the police but she did not see her son, Tory, after she talked to Detective Gilds. She stated that she told the detective that she had not seen. her son Tory. She explained that “Tory has a lot of women” and he stayed in motels. And she testified that: “when Tory called, I didn’t talk to him.”
Tory Boatner’s testimony can be ascertained from the transcript. He did not know the witnesses. He was not in Lo-die’s bar on the Sunday before Mardi Gras. On Mardi Gras, he said he was not wearing the clothing described by the two eye-witnesses. He identified photographs of now he was dressed on Mardi Gras. When his sister called on Mardi Gras night, Tory went to Lodie’s, and he started drinking. He described the fight inside the club. Tory did not get involved in the fight. His brother and sister were told to leave, and Tory followed. He heard a gunshot as he walked out of the club, and he ran. He did not see the victim in the bar or outside. Tory Boatner testified that although he was outside of Lodie’s, he did not shoot Percy Brown, and he did not have a gun that night.
| mTory Boatner agreed that he went to the hairdresser the Monday before Mardi Gras. His sister introduced him to some females.
Tory Boatner said he did not know that he was wanted for murder until a week before he was arrested. He called a lawyer who was too busy to see him that week, and Tory Boatner did not turn himself in.
Tory Boatner agreed that he was arrested in a motel room at Friendly Inn Motel on Chef Menteur Highway on March 11, 1999. A female companion who was also in the room was 16 although he thought she was 18. He did not have his “I.D.” so he gave Tina Wilson cash to register for the room. Tina Wilson did not know he had another female in the room.
Further, when the defense submitted photographs, Tory Boatner identified them as showing how he was dressed on Mardi Gras.
The majority refers to portions of Tory Boatner’s testimony that are inaudible. However, the transcript contained the parts of Tory Boatner’s testimony that were pertinent to his defense. Any omissions were harmless in view of the overall trial testimony. On review, the trial transcript more than adequately contained the testimony of the eye-witnesses and provided evidence to sustain the conviction. The defendant was not prejudiced by the “inaudible” portions of the trial transcript, and he was not deprived of his right to a fair trial or his right to an effective appeal.
Accordingly, I would affirm the defendant’s conviction and sentence as previously stated in this Court’s opinion issued on rehearing in State v. Boatner, 2001-1659 (La.App. 4 Cir.8/14/02), 844 So.2d 847.

. The facts were previously reviewed in this Court's unpublished opinion, State v. Boatner, 2001-1659 (La.App. 4 Cir.6/26/02), 844 So.2d 843, as follows:
Tonette Johnson and Roxanne Robinson were at a lounge called "Lodie's” in the early morning hours of February 17, 1999, when they witnessed a shooting which resulted in the death of Percy Brown. Johnson and Robinson were inside the lounge when they witnessed a fight between Christine Boatner, the defendant’s sister, and a girl named Keisha. While Christine was on top of Keisha, one of Christine’s brothers kicked Keisha in the head. Jewel Brown, the victim’s sister, was being held against the wall by someone else. The victim, Percy Brown, was at the bar while the fight was going on. The lounge's bouncers broke up the fight and told the Boatners to leave. Percy walked over to the area where the fight occurred and got his sister. Percy and Jewel left the bar immediately after the defendant and his family. Tonette and Roxanne walked out behind Percy and Jewel. When they went outside, they noticed that Christine Boatner was standing in the middle of the street, taunting Keisha. Percy was arguing with his sister, trying to convince her to leave. She did not want to leave her friend, Keisha. Christine took out a belt and hit Keisha across the back with the belt. Tory and Christopher, Christine’s brothers, were standing outside and then suddenly disappeared. Percy and Jewel be *859 gan walking towards Percy's vehicle. Tory and Christopher reappeared, and Tory had a gun in his hand. Christopher kept asking Tory for the gun but Tory refused to give it to him. Tory then started firing the gun. Percy pulled Jewel towards the car and told her to run. Tonette and Roxanne heard about five shots and then saw Percy fall on the ground. Tory, Christopher, Christine, and other female ran down Lafreniere towards Paris Avenue. Tonette and Roxanne spoke with the police a few days later. Roxanne gave the officers the defendant's name. Tonette and Roxanne identified the defendant in a photographic lineup as the person who shot Percy Brown.
Detective Andre Gilds investigated the homicide. He spoke with Tonette Johnson and Roxanne Robinson. Videotaped statements were taken from both women. The officer presented photographic lineups to Tonette and Roxanne who both identified the defendant as the perpetrator. Detective Gilds obtained an arrest warrant for the defendant who was later arrested at the Family Inn Motel on Chef Menteur Highway.
Officer Gerard Winbush, a firearms examiner with the crime lab, examined the five casings found on the scene and the bullet retrieved during the autopsy on the victim. Officer Winbush determined that the five casings, all nine millimeter, were fired from the same weapon. The bullet was also a nine millimeter.
Dr. Richard Tracy, a forensic pathologist, performed an autopsy on the victim. The victim suffered five gunshots from the rear. One wound to the back of the head was instantaneously fatal. One would to the arm was superficial and three other wounds to the chest and abdomen were not immediately fatal but death would have resulted from internal bleeding.
Timothy Stratton, a paramedic, was called out to the scene. When he arrived, he observed a black male lying face down on the ground. The victim suffered several gunshot wounds and had no signs of life.
Bernice Boatner testified as a character witness for her son, the defendant. She stated that the defendant lived with her and that she had seen him on Mardi Gras day, the day before the shooting.
Tory Boatner testified on his own behalf and denied that he shot the victim. He stated that he did not get involved in the fight and did not have a weapon. He testified that he heard a gunshot as he walked out of the club and ran. He did not see the victim in the bar or outside the lounge. The defendant admitted to prior conviction for possession of cocaine and carrying a concealed weapon. He acknowledged that he was on probation at the time of the shooting.