IzREMY CHIASSON, Judge, Pro Tem.
Defendant, Robert Dunklin, was charged by bill of information with aggravated battery, a violation of LSA-R.S. 14:34. He pled not guilty. On February 20, 1992, at the conclusion of a six person jury trial, defendant was found guilty as charged. On March 9, 1992, the trial court sentenced defendant to four years at hard labor. This term of imprisonment was suspended and defendant was placed on two years active probation, with special conditions of probation, including that he complete 100 hours of community service, pay a specified fine, and pay a monthly probation fee.[1]
*949 On May 20, 1992, the state filed a bill of information alleging defendant was a fourth felony offender. On January 15,1993, defendant was arraigned on the multiple offender bill and pled not guilty. Thereafter, on March 9, 1993, the state amended the bill to charge defendant as a second felony habitual offender. Defendant pled guilty to this bill and admitted the prior conviction. After advising defendant of his rights,[2] the trial court vacated | gthe original sentence and sentenced defendant to ten years at hard labor, without probation or suspension of sentence and with credit for time served. Subsequently, defendant applied for post conviction relief, was granted an out of time appeal, and was appointed counsel for the appeal.
On appeal, defendant’s counsel has filed a Motion to Withdraw as counsel, stating that he finds no non-frivolous issues to appeal as per Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), reh. denied, 388 U.S. 924, 87 S.Ct. 2094,18 L.Ed.2d 1377 (1967).

FACTS

On August 1, 1990, Kim Wright went with her aunt to the home of Wright’s mother and step-father, Robert Dunklin (defendant). There, defendant came to the door and told Wright to leave his home. An argument ensued and Wright picked up a bottle. Finally, Wright retreated to the automobile, a few feet away from the house; Wright began kicking her legs and was stabbed by an object held by defendant. Subsequently, Wright was treated at the hospital for the wound in her leg. Defendant, who left his home after the incident, was arrested when he later returned.
Ms. Wright testified that defendant chased her from the house and she picked up a bottle to protect herself. Defendant ran inside the home, retrieved a steak knife and returned outside. Saying he was going to kill her, defendant began to jab the knife towards Wright’s abdomen. Wright, who was pregnant, put her legs up to prevent being stabbed in the stomach.
Joanne Perry, Wright’s aunt, was an eyewitness to the incident and testified at the trial. Perry stated she was at the home when Wright arrived. She saw defendant go inside, return with a knife and stab Wright, who was in the vehicle. She did not see Wright hit defendant before he obtained the knife. Perry did see a bottle in Wright’s hands but saw her put it down before she went to the ear.
|4Ponald Levet, defendant’s next door neighbor, was called as a witness by defendant and testified at the trial. While outside, he heard defendant and Wright arguing. Wright was cursing defendant and using such foul language that Levet sent his children inside. During the altercation, Levet saw a broken bottle in Wright’s hand and a potato peeler in defendant’s hand. Levet tried to separate Wright and defendant, but as Wright was kicking the potato peeler held by defendant went into Wright’s leg. Levet claimed that the injury was accidental and caused by Wright’s kicking. He further testified that defendant did not stab Wright.
Dianne Perry Dunklin, defendant’s wife and Wright’s mother, testified that her daughter and defendant did not “get along.” On August 1, 1990, when Wright called and said that she was coming over to the house, defendant asked her not to come. However, Wright arrived with her aunt, Mrs. Dunklin’s sister. When defendant answered the door he asked Wright to leave; she refused and the two began fighting. Mrs. Dunklin called her neighbor and asked him to intercede in the fight. She remained inside and did not see the fight outside.
Defendant testified on his own behalf. He admitted to having three prior felony convictions from 1969 through 1989. Defendant *950 testified that Wright had a grudge against him because he had asked Wright’s boyfriend, who had been living with defendant and his wife, to move out of the house. When Wright came to the house, he had been peeling potatoes and preparing dinner for his wife, who was recovering from a heart attack. Defendant testified that he and Wright “exchanged words” after he asked her to leave his home. When Wright began kicking, she hit her leg on the potato peeler, which defendant had in his hand. On cross-examination, defendant stated the vehicle was parked about 10 feet from the door of the house. He admitted Wright was injured while she was inside the automobile, but he denied following her to the car. He further admitted that he was standing next to the car when Wright was wounded, but denied pursuing her to the vehicle.
On rebuttal, Joanne Perry contradicted defendant’s testimony that he was preparing a meal before Wright arrived. Perry further stated that defendant went to the car in which |5Wright was sitting, opened the door, and stabbed Wright. On cross-examination, Perry stated she had no animosity toward defendant, but admitted she did not like him. DISCUSSION
In the present case, defense counsel has filed a brief which follows the procedure approved by the United States Supreme Court in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), reh. denied, 388 U.S. 924, 87 S.Ct. 2094,18 L.Ed.2d 1377 (1967). In Anders, the Supreme Court stated:
The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court, [footnote omitted]. His role as advocate requires that he support his client’s appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel’s brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel’s request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.
Anders v. California, 386 U.S. at 744, 87 S.Ct. at p. 1400.
We have reviewed counsel’s brief (which states that no non-frivolous issues can be found) and notice sent to defendant (informing him of the right to file a pro-se brief.) Then, we have conducted a review of the record (“error patent review”), including the transcripts and all the rulings for issues which arguably support the appeal.[3] Because we find none, we grant counsel’s Motion to Withdraw. See State v. Riley, 94-811 (La.App. 4 Cir. 9/29/94), 643 So.2d 785.
| ^¡Defendant filed a pro se supplemental brief identifying those issues on appeal he felt to be non-frivolous. We have reviewed the issues he presents, all of which concern the multiple offender proceeding, and find that none of them are non-frivolous. First, defendant argues that it was error for the trial court to file the multiple bill of information on the same day it conducted the multiple offender hearing. As noted above, the multiple offender bill of information was filed on May 20,1992, the defendant was arraigned in January, 1993, and hearing did not take place until March 9, 1993. Second, Dunklin *951 argues that he was not advised of his constitutional right to remain silent at the multiple offender hearing. However, the transcript of that hearing shows that he was so advised. Third, defendant argues that he was not advised of his maximum penalty exposure (10 years at hard labor without parole) if he pled guilty to the multiple offender bill. The transcript of the hearing shows that he was advised of the penalty. Last, defendant argues that he was prejudiced by the delay between his conviction and the institution of the multiple offender proceeding. However, defendant cannot point to any way in which the time lapse caused him any harm.
In his brief, defense counsel notes that since his sentencing, defendant has filed pleadings regarding the Department of Probation and Parole’s denial of parole eligibility. The trial court did not specifically impose the sentence without parole eligibility. Defense counsel contends that a possible argument about the parole eligibility is without merit because defendant has three prior felony convictions and LSA-R.S. 15:574.4 A(l) specifically denies parole eligibility to a third or subsequent felon. Defense counsel further notes that the trial court did not promise defendant parole eligibility and contends that there are no non-fiivolous issues which arguably support the appeal. The brief does ask for an error patent review.
The record shows that the trial court did not state the sentence was imposed “without benefit of parole.” Nor does the waiver of rights and guilty plea form indicate the sentence was to be imposed without parole. Apparently, the denial of parole eligibility is based upon LSA-R.S. 15:574.4 A(l), which provides that a person with a third or subsequent felony conviction is not eligible for parole. Thus, the parole ineligibility was not |7a result of the trial judge’s imposition of sentence and no error occurred during the sentencing. Further, the transcript of the sentencing does not indicate that defendant was promised parole eligibility at the time of his sentencing.
Herein, as noted in the error patent discussion below, there is one error patent on the face of the record. Since neither this error patent nor an argument about parole eligibility merits reversal of the conviction or sentence, it does not appear there are any appealable issues which arguably support the appeal. Further, we have reviewed the transcript and rulings of the trial court. From our review, it does not appear that there are any issues which could be raised that would have merit.
We note as error patent that the trial court failed to inform defendant of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8 C. In addressing this type of error patent in the past, our court has remanded the matter to the trial court and ordered it to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289. However, in this case, defendant has already exercised his right to file an application for post-conviction relief by his request for an out of time appeal. Thus, in this case the trial court’s failure to so inform defendant is harmless error, and we see no need to remand.
Accordingly, we grant defense counsel’s motion to withdraw and affirm the conviction and sentence.

AFFIRMED.

. The minute entry in the record indicates the trial court imposed numerous fees as special conditions of probation. However, the transcript of this sentencing shows that the fees were not expressly imposed by the trial judge. Since the transcript prevails when there is a discrepancy, *949 State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, these fees are not part of the actual sentence imposed.

. LSA-R.S. 15:529.1 D provides that before a defendant admits the allegations of a multiple bill, the trial court must advise him of his right to a formal hearing at which the state must prove its case and must advise him of his right to remain silent. State v. Harris, 612 So.2d 280, 283 (La.App. 5 Cir.1992), writ denied 618 So.2d 402 (La.1993). Herein, the record reflects that when defendant pled guilty to the multiple offender bill, the trial court conducted a full Boy-kin examination.

. In Anders cases, in addition to the usual error patent review (see Error Patent Discussion, infra), this court reviews the transcripts and all rulings for appealable issues.