BYRNES, Judge.
Bobby McDaniel requests a review of his claims of ineffective assistance of trial counsel and excessive sentence by application for supervisory writs. We affirm.
In May 1984 Dennis Scolp, a resident of Arkansas, was visiting his daughter and son-in-law in New Orleans. On May 25, 1984 at about 8:30 a.m. Stewart Clark and his father-in-law, Dennis Scolp, were loading golf clubs into the rear of Mr. Scolp’s gray Cadillac in front of his son-in-law’s residence at 7513 Burthe Street. A man came up from behind Mr. Scolp, pointed a gun at his head, and demanded the men’s money. After the defendant made several threats, both men turned over their money to the perpetrator. The perpetrator then ordered Mr. Clark to walk down the street, and the perpetrator entered Mr. Scolp’s car and drove away. The two victims then called 911 and gave a detailed description of the perpetrator to the investigating officer.
A week later, Mr. Scolp’s vehicle was found in one of the driveways to the St. Thomas Housing Project on Religion Street. Apparently, the vehicle had been involved in another crime although evidence of this crime was not introduced at the trial in the present case. The state called Ms. Rosemary Chancy who testified that she saw a man wearing a straw hat in the passenger seat of the Cadillac, and that the hat looked similar to the hat that the defendant was wearing the morning he was arrested on June 1. Ms. Chancy testified that she did not see the defendant’s face and was making an identification based only on the hat and the back of his head. A palm print was taken from this vehicle which matched the defendant’s palm print. The defendant was charged with armed robbery of Mr. Scolp’s vehicle and with armed robbery of Mr. Clark’s golf *854 clubs which were located in the trunk of Mr. Scolp’s vehicle. Mr. Clark positively identified the defendant’s photograph as the perpetrator of these crimes from a set of eight photographs he was shown on June 13, 1984. Both Mr. Scolp and Mr. Clark positively identified the defendant as the perpetrator at trial. The jury found the defendant guilty of one count of armed robbery and guilty of simple robbery as to the second count.
After a multiple bill hearing on September 10, 1984, the defendant was sentenced as a triple offender to serve 75 years at hard labor and was sentenced on the simple robbery conviction to serve seven years at hard labor with the sentences running concurrently. On appeal, this court affirmed the convictions and sentences in an unpublished per curiam opinion dated December 23, 1985.
On September 25, 1991 the defendant filed an application for post-conviction relief in the trial court. After a hearing on January 17, 1992, the trial court denied the defendant’s application. However, on February 14, 1992 the trial court granted the defendant’s motion to correct an illegal sentence and resentenced the defendant to serve 49¾⅛ years at hard labor without benefit of parole, probation, or suspension of sentence, to run concurrently with the seven year sentence on the simple robbery conviction. Pursuant to LSA-C.Cr.P. art. 930.6, the defendant seeks this court’s supervisory jurisdiction to review his claims for post-conviction relief.
Bobby McDaniel contends that he was denied effective assistance of trial counsel because counsel failed to interview the defendant, to investigate and pursue McDaniel’s defense by contacting alibi witnesses, or to ask for a continuance to subpoena alibi witnesses for trial.
To substantiate a claim of ineffective assistance of counsel, the defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant under the two-tiered test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). Counsel’s performance is ineffective when it can be shown that he made errors so serious that the attorney was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. State v. Johnson, 582 So.2d 885 (La.App. 4 Cir.1991), writ denied in part, not considered in part by Johnson v. Day, 605 So.2d 1357 (La.1992). Further, the prejudice alleged must be so great that it resulted in the guilty verdict and deprived the defendant of a fair trial. State v. Johnson, 551 So.2d 14 (La.App. 4 Cir.1989), writ denied 556 So.2d 56 (La.1990); State v. Forest, 590 So.2d 846 (La.App. 4 Cir.1991).
Attached to defendant’s writ application is a statement from a witness, Ms. Terry Williams, who states that she would testify that the defendant was with her from 2:30 a.m. until about 9:45 a.m. on May 25, 1984, the day the offenses occurred. The defendant testified at the hearing in the trial court on his application for post-conviction relief that there are a number of witnesses who would testify that he was not near the scene of the crime. Mr. McDaniel testified that he told Mr. Larre about the witnesses but Mr. Larre did not attempt to subpoena these witnesses for trial. The defendant’s girlfriend, Patricia Beasley, testified that Mr. Larre asked her to contact one of the witnesses to find out if the witnesses could appear for trial. Ms. Beasley testified that she called Ms. Lola Mae Keene, who said she was willing to testify but could not leave that day because she could not get a baby sitter for her child. Ms. Beasley testified that she related the information to Mr. Larre.
Mr. Larre had no independent recollection of this case but testified that he was working for the Orleans Indigent Defender Program where the usual procedure was for an investigator to interview the defendant in prison before trial and Mr. Larre discussed cases with defendants at court hearings prior to trial. Mr. Larre testified:
It has always been my policy in the time that I’ve worked for the public defender’s officer from 1979 to 1985 to always *855 ask for a continuance to attempt to locate a witness if that was told to me.
Another attorney, Jack Dolan, represented the defendant at the multiple bill hearing and sentencing. He did not request a new trial on the basis of additional evidence that the defendant had alibi witnesses at the time of trial. Jack Dolan also lodged an appeal on behalf of the defendant but did not include a claim of alibi witnesses in the brief which he filed.
Minute entries dated August 2 and 9, 1985 state that the trial court filed a judgment denying the defendant’s motion for new trial/post-conviction relief. A minute entry of September 13, 1985 notes that this court denied defendant’s application for writ of mandamus. On September 24,1985 the Louisiana Supreme Court transferred the defendant’s writ of mandamus to this court, which denied the writ as moot. On December 30, 1985 the trial court ordered filed this court’s judgment affirming defendant’s conviction and sentence on appeal. If the defendant’s motion for new trial contained a claim of alibi witnesses, this court ruled on that issue. If the defendant’s motion for new trial did not contain a claim of alibi witnesses, it would be remiss for the defendant to delay in making such a claim until 1991.
The record indicates that Mr. Larre saw the defendant in court on four occasions. The minute entries reflect that on July 9, 1984 Mr. Larre entered a plea of guilty on the defendant’s behalf and a hearing on the pleadings was set for July 27, 1984. On July 27, 1984 the hearing on the pleadings was continued by joint motion. Mr. Larre incorporated all pleadings filed in Case Nos. 301-983 and 302-413 and made an oral motion to suppress.
On August 13, 1984 Mr. Larre again made an oral motion to suppress identification and called three police officers as witnesses at the hearing. Mr. Larre objected to the trial court’s denial of the motion to suppress and the trial was continued and reset for August 14, 1984, with the state and defense to notify witnesses. The trial court noted in the January 17, 1992 hearing that it was customary for the motion hearings to be set the day before the trial if an out-of-town witness was to testify at trial.
The minute entry of the trial on August 14, 1984 shows that the state filed answers to the bill of particulars and motion in limine filed by Mr. Larre. Mr. Larre participated in the critical selection of the voir dire and eight jurors were excused by the defense. While the jury was outside of the courtroom, Mr. Larre objected to the testimony of Ms. Chancy, the witness who identified the head and hat of the defendant in the stolen Cadillac, and the court granted Mr. Larre’s motion in limine, limiting that witness’s testimony so as not to relate any of the later separate offense to the jury.
Although Mr. Larre did not make an opening statement, he cross-examined seven witnesses. He made appropriate objections during trial. Mr. Larre testified on January 17, 1992 that considering that the defendant was a triple offender, Mr. Larre normally would not place the defendant on the witness stand during trial. As pointed out by the trial court, the jury found the defendant guilty of simple robbery on the second count, a lesser offense than charged, which would be attributable to Mr. Larre’s closing argument.
Mr. Larre actively participated in the trial. The evidence against the defendant was substantial. At trial the two victims positively identified the defendant as the perpetrator. One of the victims selected the defendant’s picture in a photographic identification. Although the defendant claims that a witness would testify that the defendant placed his palm print on the Cadillac when he was arrested, at the preliminary hearing and at trial, officers stated that the stolen Cadillac was found parked in a driveway on Religion Street whereas the defendant was arrested a short time later on June 1, 1984 on Rousseau Street (for another unrelated offense).
At the January 1992 hearing, the testimony of the defendant and his girlfriend contained inconsistencies. According to the testimony of Ms. Patricia Beasley, she called Ms. Lola Mae Keene, who said she could testify but could not leave on the day *856 of trial because she could not get a baby sitter for her child. The defendant testified that Lola Mae Keene was killed in 1986 two days after the defendant’s arrest and that Ms. Keene knew who actually committed the crime. Although the defendant was arrested in June 1984, he stated that he was arrested in 1986. If Lola Mae Keene had been killed before the defendant was arrested, she could not have been available for trial. It is noted that children including infants are not barred from trial court and frequently are present in the courtroom, indicating that Ms. Keene may have taken her child with her if she testified.
Considering that the defendant did not present the claim of alibi witnesses until several years after his appeal was final, the defendant failed to provide evidence to support his claim that he had alibi witnesses at the time of trial. Nothing can be gleaned from the record to support defendant’s claim that Mr. Larre was aware of alibi witnesses but failed to subpoena them for trial. The defendant did not demonstrate a specific showing of actual prejudice because of his attorney’s performance. Any error did not deprive the defendant of a fair trial.
Bobby McDaniel also contends that the trial court erred by imposing a harsher sentence after granting the defendant’s motion to correct illegal sentence and imposing a sentence of 49½ years at hard labor without benefit of parole, probation or suspension of sentence. The defendant argues that the second sentence is harsher because his original sentence of 75 years at hard labor allowed parole eligibility. Defendant claims that the resentencing is unconstitutional because it required the appellant to serve a greater number of years than the original sentence.
Because the issue was raised by the defense, the correction by the trial court was not unconstitutional or unfair; the correction of an illegal sentence will usually result in a harsher sentence regarding parole eligibility than that originally imposed. State v. Desdunes, 579 So.2d 452 (La.1991); State v. Flowers, 598 So.2d 1144 (La.App. 1 Cir.1992). Both the prosecutor and the defendant should be given an opportunity to present evidence in argument regarding the intent of the original sentencing judge; the resentencing judge should consider the guidelines in effect at the time of the original sentencing. State v. Husband, 593 So.2d 1257 (La.1992). It is not necessary that the trial court recite all the factors listed under LSA-C.Cr.P. art. 894.1 in its reasons for sentence as long as there is evidence in the record that the factors were considered and the sentence was tailored to fit the particular defendant and his particular crime. State v. Soco, 441 So.2d 719 (La.1983), appeal after remand, 508 So.2d 915 (La.App. 4 Cir.1987); State v. Nelson, 449 So.2d 161 (La.App. 4 Cir.1984). The trial court’s failure to repeat reasons for imposing sentence on remand for resentencing does not require a second remand where the record contains a sufficient showing of compliance with sentencing guidelines and a sufficient proof of the defendant’s prior criminal convictions. State v. Gibson, 596 So.2d 832 (La.App. 5 Cir.1992), post-conviction relief denied, 598 So.2d 348 (La.1992) and habeas corpus denied by Gibson v. Whitley, 1992 WL 211537 (E.D.La.1992) (NO. CIV.A. 92-1951).
The defendant was properly multiple billed. In sentencing McDaniel at the multiple bill hearing on September 10, 1984, the trial judge articulated his reasons for imposing sentence as required by LSA-C.Cr.P. art. 894.1 as follows:
... The minimum that this Court could give on this matter would be 50 years. However, we don’t think 50 years is warranting (sic) the sentence in this particular matter. We have looked at the defendant’s record and the district attorney’s file, which is at least six feet long, both his juvenile and adult life. The defendant was charged in this particular case with two counts of armed robbery. The jury came back guilty as charged on one and guilty of simple robbery on the other. The maximum sentence in this matter on a double bill is 198 years. The guidelines and reasons for sentencing in *857 this particular matter point out whether or not the defendant is in need of custodial incarceration. It is the opinion of this Court, the testimony that we heard, that the defendant is a walking crime wave. We think that any lesser sentence would depreciate the seriousness of the crime involved, and we certainly think that the defendant is in need of custodial incarceration. Maybe had the defendant been given the right amount of time during these other past sentences, some type of sense would have shaken into him to prevent him from facing the amount of time he’s facing today. But be that as it may, this Court considers armed robbery one of the most heinous of crimes, second only to murder itself. Not only is the right to property jeopardized, but actual human life is put in jeopardy. And quite often when murders are solved they are accompanied with (R.S. 14:)64’s, which are armed robberies....
Considering that the trial judge noted the minimum and maximum sentences, that the defendant had an extensive record, and that the judge felt that armed robbery is a particularly serious offense, the record clearly supports the defendant’s initial sentence and subsequent sentence.
The defendant has not substantiated grounds for relief and accordingly, his conviction and resentence are affirmed.
AFFIRMED.