747 So.2d 1182 (1999)
STATE of Louisiana
v.
Isaiah A. COOLEY.
No. 98-KA-0576.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1999.
*1183 Harry F. Connick, District Attorney, Loan "Mimi" Nguyen, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff-Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, Louisiana, Counsel for Defendant-Appellant.
Court composed of Judge WILLIAM H. BYRNES, III, Judge CHARLES R. JONES and Judge DENNIS R. BAGNERIS, Sr.
BYRNES, Judge.
On June 13, 1994, the defendant, Isaiah Cooley, was charged with eight counts of armed robbery in violation of La. R.S. 14:64, three counts of first degree robbery in violation of La. R.S. 14:64.1, and one count of attempted first degree robbery in violation of La. R.S. 14:64.1.[1] The defendant *1184 pled not guilty to all counts at his arraignment on June 15, 1994. A motion hearing as to counts ten and twelve was held on October 21, 1994. The trial court found probable cause and denied defendant's motion to suppress identification. On the same date, the trial court granted defendant's motion for a sanity commission. The trial court appointed Drs. Deland and Richoux to examine the defendant. On May 16, 1995, the defendant was found incompetent and transferred to the Feliciana Forensic Facility. At a subsequent sanity hearing on March 17, 1996, the defendant was found competent to proceed. A motion hearing as to counts three and seven was held on July 26, 1996. The trial court found probable cause and denied the defendant's motion to suppress identification. A motion hearing on count six was held on September 19, 1996. The trial court found probable cause and denied defendant's motion to suppress identification. A motion hearing as to counts two and five was held on April 15, 1997. The trial court found probable cause and denied defendant's motion to suppress identification. A motion hearing on counts one, four and eleven was held on July 28, 1997. The trial court found probable cause and denied defendant's motion to suppress identification.
A jury found the defendant guilty as charged on all counts on which he was tried: four counts of armed robbery (counts one, four, five and seven), two counts of first degree robbery (counts three and eleven), and one count of attempted first degree robbery (count twelve). At the sentencing hearing on August 8, 1997, the defendant filed pro se motions to dismiss and in arrest of judgment which the trial court denied. After the defendant waived delays, the trial court sentenced the defendant to serve fifty years at hard labor without benefit of probation, parole or suspension of sentence on each conviction of armed robbery, twenty-five years at hard labor without benefit of probation, parole or suspension of sentence on both convictions for first degree robbery, and twenty-five years at hard labor without benefit of probation, parole or suspension of sentence on the conviction for attempted first degree robbery. The sentence on count three, a first degree robbery, was to be served consecutively to count one, an armed robbery conviction. The sentence on count four, an armed robbery, was to be served consecutively to count three but concurrently to count one. The sentence on count five, an armed robbery, was to be served consecutively with counts one, three and four. The sentence on count seven, another armed robbery, was to be served consecutively to counts one, three, four and five. The sentence on count eleven, a first degree robbery, was to be served consecutively to counts one, three, four, five and seven. The sentence on count twelve, an attempted first degree robbery, was to be served consecutively to counts one, three, four, five, seven and eleven. The trial court granted defendant's motion for appeal and appointed the Louisiana Appellate Project to represent the defendant. The defendant filed a pro se motion to reconsider sentence on August 18, 1997, which the trial court subsequently denied.
The defendant appealed.

II. STATEMENT OF FACT

Yuvanca Winesberry was working as a cashier at the Shell Service Station at 1100 Franklin Avenue in November of 1993. On November 13, 1993, the defendant came into the store and showed her a gun he had under his shirt. He told her to give him the money. Ms. Winesberry complied, and the defendant left after taking the money. The police were called, and Ms. Winesberry gave the officers a description of the perpetrator. She described the suspect as a black male with a goatee and mustache. Ms. Winesberry *1185 was working at the service station on March 19, 1994, when the defendant robbed the store for a second time. The defendant had a gun in a brown bag and told her to give him the money. Ms. Winesberry opened the register and gave the defendant the money. The defendant took the money and ran. The police were called to investigate the robbery. Ms. Winesberry stated that she remembered the defendant from the robbery in November of 1993. Ms. Winesberry identified the defendant in a photographic lineup and at trial as the perpetrator.
On March 3, 1994, Ms. Deneen Labostrie was employed as the manager at the Time Saver on Chef Menteur Highway. At approximately 5:00 a.m. that morning, the defendant walked into the store. Ms. Labostrie asked if she could help him. The defendant did not respond. The defendant then walked to the register with a jar of olives. When Ms. Labostrie rang up the sale, the defendant gave her two dollars. As she was opening the register, the defendant told her to give him the money. She gave him the tray. The defendant then took the money and left. During the robbery, the defendant had his hand in his pocket and said he had a gun. After the defendant left, Ms. Labostrie called the police. She described the perpetrator as a black male, five feet two inches tall, one hundred thirty-five pounds, with facial hair on his chin, and wearing a hat and long trench coat. The surveillance cameras were able to tape the robbery. Ms. Labostrie identified the defendant at trial and in a photographic lineup as the perpetrator.
Madeline Johnson was working at the Magic Market at 1535 Franklin Avenue on March 19, 1994. On that day, the defendant walked into the store and asked for a pint of Crown Royal. Ms. Johnson turned to get the item and when she turned back towards the defendant, he raised his shirt and showed her a gun. The defendant told her to give him the money. The witness complied and gave the defendant the money. The defendant then left and Ms. Johnson called the police. Ms. Johnson gave the police a description of the perpetrator. About a month later, Detective Crespo came into the store. On that day, another person was working the register. Ms. Johnson was the manager on duty. Detective Crespo asked Ms. Johnson if anyone knew the person who had just left the store. When Ms. Johnson got to the front door to see the person, the defendant saw her and started running. Ms. Johnson informed Detective Crespo that the defendant was the person who had robbed her one month earlier. Ms. Johnson identified the defendant at trial and in a photographic lineup as the perpetrator.
In April of 1994, Melissa Caddie was employed as a sales clerk at the Eckerd's Drugs at 1101 Elysian Field Avenue. On April 9, 1994, the defendant robbed her. Ms. Caddie testified that the defendant got into her line with a pack of gum and deck of cards. When a few people got into her line, the defendant got out of line saying that he had the wrong deck of cards. The defendant got back into line after she had checked out the other customers. The defendant told her he had a gun and to give him the money. While the witness did not see the gun, she believed he had a gun. The defendant left after she gave him the money. Ms. Caddie informed her manager that she had been robbed, and the manager called the police. Ms. Caddie described the perpetrator as a black male, between five feet five inches and five feet six inches and wearing a maroon sweat-shirt, blue slacks and a blue and white cap. Ms. Caddie identified the defendant at trial and in a photographic lineup as the perpetrator.
Ms. Denise Coubarous was working at the Walgreen's at 1100 Elysian Fields on April 13, 1994. On that day, the defendant entered the store and attempted to rob her. The defendant approached the counter and mumbled something. Ms. Coubarous said "excuse me." The defendant then lifted his shirt and showed her a gun in a brown bag. She could see the brown handle of the gun. The defendant told her *1186 to give him the money or he would shoot her. At that point, her phone rang. She answered the telephone and started putting the money in a bag. For some reason, she ran screaming towards the hallway. The defendant ran out the front of the building. The police were called, and Ms. Coubarous gave the officers a description of the perpetrator. She stated the perpetrator was a black male, approximately five feet six inches tall and one hundred fifty pounds, wearing a greenish-black striped shirt, black jeans and a cap. Ms. Coubarous identified the defendant at trial and in a photographic lineup as the perpetrator.
On March 21, 1994, Ms. Frances Bourgeois was working at the Time Saver at the intersection of Robert E. Lee Boulevard and Elysian Fields Avenue. At approximately 8:00 a.m., the defendant walked into the store and robbed her at gunpoint. The defendant showed her a gun in a brown paper bag and told her to give him the money. Ms. Bourgeois gave the money to the defendant, and the defendant left. Ms. Bourgeois then yelled to the manager that she had just been robbed. The police were called. Ms. Bourgeois gave a description of the perpetrator to the police. She described the suspect as a black male, approximately five feet six inches tall, thinly built with a thin face and pointed nose. Ms. Bourgeois identified the defendant at trial and in a photographic lineup as the perpetrator.
New Orleans Police Officers Lionel Adams investigated the robberies. The victims described the perpetrator as a black male, approximately twenty-five years old, five feet seven inches to five feet eight inches, slender build and having a goatee and mustache. Officer Adams and Crespo were conducting surveillance of various businesses due to the numerous robberies when they observed a bicycle parked outside of a Magic Market at the corner of Claiborne Avenue and Franklin Avenue. The officers noticed the bike because it was parked at the far end of the store and was not secured. The officers waited outside the store for the person who was using the bike. When the defendant came out of the store, the officers noticed that he fit the description of the robbery suspect. While Officer Adams questioned the defendant, Officer Crespo went inside the store to speak with the store clerk. When he came outside, the defendant broke away and rode off on the bike. The officers pursued the defendant and requested assistance from other units. The defendant abandoned the bike outside of 2624 Derbigny Street. The defendant was apprehended after he jumped a fence at 2624 Derbigny Street. The defendant was found in a dumpster behind a Chevron station across from the Magic Market. The defendant was wearing two sets of clothing. When the officers first stopped the defendant, he was wearing a baseball cap and a Miami Hurricanes short set. The shorts and shirt were found on top of a shed behind the Chevron station. The baseball cap was found in the back yard of 2624 Port Street. When the defendant was apprehended, he was wearing a Pepsi Cola shirt that was turned inside out and black shorts. After the defendant's apprehension, the officers prepared photographic lineups that were shown to the victims. The victims identified the defendant as the perpetrator.
Detective Justin Crespo investigated the robberies with Detective Adams. He spoke with Madeline Johnson, the clerk at the Magic Market. As Detective Adams walked out of the store, Ms. Johnson followed him. When she saw the defendant, she said "That's him." At that point, the defendant broke away from Detective Adams.
The defendant, Isaiah Cooley, denied involvement in the alleged robberies. He stated that on the date of his arrest, he was not wearing two sets of clothing. He was wearing a black shirt and black shorts. He further stated that the bike did not belong to him. He did not ride the bike to Magic Market. The defendant testified that he surrendered to a female officer. He claimed Officers Adams and Crespo *1187 beat him. He admitted a prior conviction for possession of stolen property.
On rebuttal, Officer Takishiba Lane testified that she apprehended and arrested the defendant on April 14, 1994. The officer saw the defendant jump over the fence behind the Chevron station. She apprehended the defendant as he came from behind the dumpster. The defendant did not have any marks or bruises on him.
Detective Adams stated that he did not beat or threaten the defendant. He did not see any other officer beat or threaten the defendant.

III. ERRORS AND ANALYSIS

A. Errors Patent

A review of the record for errors patent reveals that the trial court imposed an illegally excessive sentence on the defendant's conviction for attempted first degree robbery. La. R.S. 14:27 provides that a person convicted of an attempt "shall be fined or imprisoned or both, in the same manner for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted or both." Under La. R.S. 14:64.1, the longest term of imprisonment for a person convicted of first degree robbery is forty years at hard labor without benefit of probation, parole or suspension of sentence. Thus, the trial court's sentence of twenty-five years at hard labor without benefit of probation, parole or suspension of sentence on the defendant's conviction for attempted first degree robbery is illegally excessive.[2] The defendant's sentence must be vacated and the case remanded for re-sentencing.
No other errors patent were found.

B. Assignment of Error Number 1

In this assignment, the defendant argues that his right to a complete appellate review has been violated by the trial court's failure to protect the trial record as regards counts three and seven. Specifically, defendant complains that the transcript from the preliminary and suppression hearing held on July 26, 1996, is not available. At that hearing, the trial court heard testimony concerning counts three and seven, the first degree robbery of Deneen Labostrie and the armed robbery of Frances Bourgeois. The trial court found probable cause and denied defendant's motions to suppress identification as to both counts.
A review of the trial transcript reveals that the victims of both robberies testified at trial. They both identified the defendant at trial as the perpetrator. In addition, the victims testified about the photographic lineups they were shown and their identification of the defendant as the perpetrator.
La. Const. Art. I, § 19 provides that "[n]o person shall be subjected to imprisonment... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." La.C.Cr.P. article 843 requires, in all felony cases, the recording of "all the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements and arguments of counsel." This Court has recognized that a complete appellate review of a defendant's conviction and sentence can be accomplished even when there are missing portions of the trial record. State v. Thomas, 92-1428, 637 So.2d 1272 (La.App. 4 Cir. 5/26/94), writ denied, 94-1725 (La.11/18/94), 646 So.2d 376, cert. denied, Thomas v. Louisiana, 514 U.S. 1054, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995).
The defendant relies upon State v. Diggs, 93-0324 (La.App. 4 Cir. 6/29/95), 657 So.2d 1104, in support of his argument that the lack of the preliminary and suppression *1188 hearing transcript prevents a complete review of his convictions and sentences. In Diggs, the trial transcript was incomplete. The defendants had been charged and convicted of distribution of cocaine. The defendant had apparently sold cocaine to an undercover police officer. On appeal, it was discovered that a portion of one of the police officer's testimony was missing. The transcript contained part of direct examination of Officer Prats, one of the officers on the surveillance team. The transcript did not contain the rest of the direct examination and none of the cross-examination or redirect examination. Noting that only the undercover officer and Prats testified at trial, this Court held that the missing portion of Prats' testimony could not be deemed insubstantial. Thus, this Court reversed defendant's conviction and remanded for a new trial.
However, the present case differs from Diggs as the lack of the transcript from the suppression hearing is not substantial as both victims testified at trial. Their testimony included the details of the robberies and their identification of the defendant as the perpetrator in the photographic lineup. The victims and Officers Adams and Crespo testified as to the procedures used in the photographic lineups presented to the victims. Thus, all evidence necessary for the trial court to rule on the issues of probable cause and suppression of identification was introduced at trial. As the complete trial transcript is available, the defendant has suffered no prejudice from the missing transcript of the suppression and preliminary hearing.
This assignment is without merit.

C. Assignment of Error Number 2

In this assignment, the defendant contends that his cumulative sentences are illegal and unconstitutionally excessive. However, this assignment of error really breaks down into three parts, the first of which has already been disposed of earlier in this opinion as an Error Patent, i.e., the illegally excessive sentence of 25 years for first degree armed robbery.
The defendant also included the following issues in his second assignment of errors:
The district court gave no reasons for imposing the given sentences, but simply meted out same with no explanation. As such, this court failed to comply with La.C.Cr.P. art. 894.1C.
Appellant's consecutive sentence amount[s] to 275 years in prison, a term far too harsh for the crimes committed. Although, the appellant was described as a malingerer by examining psychiatrists and support staff, his claim of a hearing impediment was confirmed by conversations with the appellant's mother. This should have been considered as a mitigating factor, but nothing in the sentencing transcript indicates that this was done.
The defendant's argument concerning his hearing impediment as a mitigating factor concerns a brief reference to a hearing problem in his left ear found in an "Initial Social/Legal/Vocational Assessment" prepared by one Lynn Covington, BCSW. The defendant does not explain why this should be considered a mitigating factor, and there is nothing in the record that would suggest to this Court that we should treat it as such. We find no merit in this argument.
The defendant does not contend that there are any other mitigating factors bearing on his sentencing.
Finally we consider the defendant's contention that the trial court failed to express, as is required by La.C.Cr.P. 894.1, subd. C, justification for imposing such sentences, the cumulative effect of which the defendant asserts is excessive. Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the *1189 purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
If the judge records the factors affecting his sentencing decision, the sentence should not be set aside as excessive unless it is grossly disproportionate to the offense or represents nothing more than the needless infliction of pain and suffering. State v. Pike, 426 So.2d 1329, 1335 (La.1983).
After being found guilty as charged of four counts of armed robbery, two counts of first degree robbery and one count of attempted first degree robbery, the trial court sentenced the defendant to serve fifty years at hard labor without benefit of probation, parole or suspension of sentence on each conviction of armed robbery, twenty-five years at hard labor without benefit of probation, parole or suspension of sentence on both convictions for first degree robbery, and twenty-five years at hard labor without benefit of probation, parole or suspension of sentence on the conviction for attempted first degree robbery. (As noted previously, this sentence for attempted first degree robbery is excessive and must be remanded.) The sentence on count three, a first degree robbery, was to be served consecutively to count one, an armed robbery conviction. The sentence on count four, an armed robbery, was to be served consecutively to count three but concurrently to count one. The sentence on count five, an armed robbery, was to be served consecutively with counts one, three and four. The sentence on count seven, another armed robbery, was to be served consecutively to counts one, three, four and five. The sentence on count eleven, a first degree robbery, was to be served consecutively to counts one, three, four, five and seven. The sentence on count twelve, an attempted first degree robbery, was to be served consecutively to counts one, three, four, five, seven and eleven.
The transcript of the sentencing hearing does not contain any explicit reasons expressed by the trial court in support of the sentencing, other than the fact the trial judge was explicit as to which sentences would run concurrently and which would run consecutively. The trial judge made it clear that the consecutive sentences were for "separate victims for events that happened on different days." Thus the trial judge demonstrated that he was aware of the provisions of La.C.Cr.P. art. 883 when he imposed the consecutive sentences. La. C.Cr.P. article 883 provides that "[I]f the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently."
It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. Moreover, where the convictions stem from separate incidents involving different victims and occur over a lengthy period of time, the resulting consecutive penalties will not be found to be an abuse of discretion. State v. McCray, 28,531 (La.App. 2 Cir. 8/21/96), 679 So.2d 543.
*1190 In State v. Tucker, 591 So.2d 1208 (La. App. 2 Cir.1991), writ denied, 594 So.2d 1317 (La.1992), the appellate court affirmed consecutive sentences of forty-five years each for two armed robberies and thirty years for first degree robbery where the defendant robbed several gas stations over a one-month period. Similarly, in State v. Kennedy, 93-776 (La.App. 5 Cir. 1/25/94), 631 So.2d 1195, the Fifth Circuit affirmed consecutive sentences of fifty years each on six convictions for armed robbery and twenty-five years each on two convictions for attempted armed robbery.
In the present case, the defendant was convicted of four counts of armed robbery, two counts of first degree robbery and one count of attempted first degree robbery. These robberies involved six different victims and occurred over a five month period. La.C.Cr.P. article 883 presumes that such unrelated acts will result in consecutive sentences, "unless the trial court directs that some or all of them be served concurrently." Thus the burden is not on the trial court to justify or articulate reasons for consecutive sentences under such circumstances. Only in the event the trial court wishes the sentences to be served concurrently need it take affirmative action. In other words, where the defendant is convicted of committing unrelated crimes, the imposition of consecutive sentences should be considered the norm, concurrent sentences the exception. The defendant has cited no cases in which consecutive sentences imposed for separate acts involving different victims at different times and places were found to be excessive for no other reason other than that they were consecutive. Therefore, unless our review of the record reveals another basis for concluding that these sentences are excessive, we find no error in the trial judge's decision to order that number of the sentences be served consecutively.
Although the trial court did not articulate reasons for sentencing, a review of the record provides a sufficient basis for the sentences imposed. State v. Kennedy, 461 So.2d 455, 457 (La.App. 5 Cir.1984). The defendant admitted at trial to a prior conviction for possession of stolen property. Further, in addition to the convictions in the present case, the defendant was also charged with four additional counts of armed robbery and one additional count of first degree robbery. The bill of information reflects that the defendant went on a crime spree from November 1993 to April 1994. The testimony of the victims indicates that the defendant threatened to kill them if they did not comply with his demands. Several of the victims testified that the defendant was armed with a gun. The defendant showed no remorse and, at the time of sentencing, attempted to enter into a plea bargain to obtain a lesser sentence. There is no evidence of mitigating factors in the record.
Further, the individual sentences imposed on each conviction for armed robbery and first degree robbery are not excessive. In State v. Jones, 28,929, 28,930 (La.App. 2 Cir. 4/2/97), 691 So.2d 858, the appellate court affirmed fifty year sentences on defendant's convictions for armed robbery. The defendant had been charged with seven counts of armed robbery and one count of attempted armed robbery. The defendant went to trial on two counts of armed robbery and one count of attempted armed robbery and was found guilty as charged. In affirming the sentences, the court noted the defendant had three prior felony convictions and had committed robberies at several locations on more than one occasion. Likewise, this Court in State v. McDaniel, 622 So.2d 852 (La.App. 4 Cir.1993), upheld a sentence of forty-nine and one half years on an armed robbery conviction. The court recognized that the defendant had been charged with two counts of armed robbery and was found guilty as charged on one count and guilty of simple robbery on the second count. In Tucker, the Second Circuit affirmed a thirty year sentence on the defendant's conviction for first degree robbery. The court noted the defendant's prior convictions and that the first *1191 degree robbery conviction arose from a spree of three robberies committed by the defendant within a one month period.
In the case at bar, the sentences imposed by the trial court are justified in light of the defendant's criminal history, including the twelve robberies he was involved in over a period of five months.
Accordingly, the defendant's sentences on the armed robbery and first degree robberies convictions are affirmed. The sentence imposed on the attempted first degree robbery conviction is illegally excessive and is vacated and remanded for re-sentencing.
CONVICTIONS AFFIRMED; SENTENCES AFFIRMED WITH THE EXCEPTION OF THE SENTENCE FOR ATTEMPTED FIRST DEGREE ROBBERY WHICH IS VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] Count one: armed robbery of Yuvanca Winesberry on November 21, 1993. Count two: armed robbery of Denise Simmons on December 9, 1993. Count three: first degree robbery of Deneen Labostine on March 3, 1994. Count four: armed robbery of Yuvanca Winesberry on March 17, 1994. Count five: armed robbery of Madeline Johnson on March 19, 1994. Count six: armed robbery of Elaine Lee on March 17, 1994. Count seven: armed robbery of Frances Bourgeois on March 21, 1994. Count eight: first degree robbery of Jarmeen Nelson on March 25, 1994. Count nine: armed robbery of Evelyn Noble on April 6, 1994. Count ten: armed robbery of Samantha Slack on April 8, 1994. Count eleven: first degree robbery of Melissa Caddie on April 9, 1994. Count twelve: attempted first degree robbery of Denise Coubanous on April 13, 1994.
[2] We note that the State effectively acknowledges this error and concedes this issue in its brief in an admirable display of candor.